Bissell, J.,
delivered the opinion of the court.
Irving was a plumber and drain layer by trade and did business in the city of Highlands. He followed it for a year or so under the authority of the city and on their license, and made application for another issue in January, 1894. His applications covered both branches of his business and required separate licenses for which there were separate fees, being $10.00 for the plumber’s license, and $80.00 for the drain layers. When he made the application in January, 1894, it was given to the city engineer and he tendered two bonds executed by Ochiltree and Merrill to insure his observance of the ordinances of the city and a correct performance of his work. The applications were indorsed “ approved by the engineer,” and the bonds with the application were turned over to the city council for approval. The bonds were referred to the city attorney who did not regard them as properly executed and they were returned to Irving, or he was advised that they were insufficient in form. He seems to have *365 made out another set and tendered them but when they came before the city council they were disapproved and a license was never issued. Irving continued to do work under monthly permits issued by the proper department until May when his bonds were finally rejected and no future authority was given him to carry on his business. He or an employee was prosecuted once or twice for violation of the ordinances in attempting to do work without a license and Irving brought this suit against the city to recover damages for an arbitrary and malicious refusal to issue him a permit to carry on his trade. By his complaint he attempted to state a cause of action in tort for an arbitrary and malicious refusal to grant him a license and set up his damages as amounting to some $7,000. To sustain his case he offered proof of the amount of business which he had done in the city when he was acting under a license and of his profit, and gave evidence tending to show its diminution and practical destruction in that locality because of this failure. In order to sustain his case it was necessary for him to show a compliance with the ordinances regulating these matters and this he attempted to do. As we look at the record he did not sustain his contention that the city had arbitrarily or maliciously refused to issue a license. While the ordinances were doubtless before the court at the trial, only a few sections are incorporated into the record, and we have only parts before us from which to determine what the duties of the city and the rights of the plumber are. These incorporated sections do not show what officer was charged with the duty to issue a license, nor whether the right and authority was given to any particular officer for this purpose, nor do they show the restrictions or limitations placed on the applicant or the officer. It is consequently quite impossible for us to determine whether in any other particulars than those which will be afterwards referred to, the city took action on the application, or that any officer declined to issue the permit. The case is defective in that respect, and on this appeal there is not enough in the record to establish what is necessary to enable the plaintiff to recover. *366 There is a further difficulty disclosed by one section of the ordinance respecting licenses. This section prescribes that any mechanic or firm may on application to the city engineer and the payment of a license fee to.the treasurer receive a license. There is a proviso that no application shall be considered unless it is accompanied by a bond in the sum of #1,000 with resident sureties paying tax on real estate on twice the amount of the bond which must be approved by the city council. It is quite clear- that to maintain an action for damages against the city in tort for refusing to issue a license, the plaintiff must prove that he has done everything which the ordinance requires; he must show his application, its approval or wrongful rejection by the engineer, and the payment of the license fee. This he did. But he must go farther. He must prove that he tendered a bond in the form required by the ordinances with the requisite sureties, and that the bond was approved by the city council. He made an attempt to do this, but he signally failed. He gave notice to produce the bonds but they had evidently been lost, and they were not forthcoming. When he attempted to prove what the bonds were, he was unable to state with accuracy their terms, form, or conditions, nor did he give evidence that the city council approved them. This would undoubtedly defeat his suit unless he was able also to establish that the nonapproval was arbitrary and malicious. The evidence did not even tend in this direction. It is always true that a city is not liable in tort for the manner in which it exercises its discretionary and legislative powers. This doctrine is recognized by all the cases. 2 Dillon on Mun. Corp. § 949; 1 Beach on Public Corp. § 258; Duke v. Mayor f City Council of Rome, 20 Ga. 635.
Authorities might be multiplied in this direction, but none have been cited to the contrary, and it is a point about which all the courts agree. These ordinances gave the council the power and imposed on it the duty to pass on and approve the sufficiency of these bonds. When they refused to approve them, Irving’s remedy was either to supply new bonds meet *367 ing the objections which were urged in the council, or else to proceed against them to compel them to approve, as indicated in Harding v. The People, 10 Colo. 387.
Evidence was offered respecting the objections made to the bonds and it is quite plain that the bonds were not in the proper form, and the council were entirely right in refusing to accept them in that form. The case discloses the fact that Irving was doing business as an individual, though he had a sign and transacted business under the name of the North Denver Plumbing Company. When he executed his bonds he executed them in the name of the North Denver Plumbing Company, by C. Irving. The city attorney objected to the form of the bond, and insisted that Irving ought to execute it in his own name, if he was the only person interested in the business, or that he should incorporate if he wanted to execute a bond in the name of the company by himself as agent or attorney in fact. This was quite proper because the city would have had some difficulty in case of a breach to establish Irving’s liability as the North Denver Plumbing Company. Proof that he was the individual doing business under that name would be a matter of evidence aliunde the instrument and he had no right to impose on the city the burden of establishing that fact in order to recover on an instrument given to secure his observance of the city ordinances. The city attorney’s objection was very properly made and Irving’s duty was to prepare other bonds and tender them to the city council, who would probably, if the sureties had been good, have approved the bonds and issued the license. Whether this is the only question or not, it is quite impossible for us to determine, for it may be notwithstanding Irving’s testimony respecting the financial responsibility of his sureties the council knew them better than he did and may have regarded their bonds as worthless. At all events, it was for that body to pass on the sufficiency of the bonds both as to form and as to substance, and in their discretion accept or reject them. If they saw fit to refuse them, Irving should then have proceeded to compel them to accept the bonds, or if he *368 chose to adopt the other hypothesis and attempt to recover for the injuries to his business on account of an arbitrary and malicious refusal, he should have given some evidence to that point. The abstract contains none, nor are we able to find any in the transcript which we have read.
In the case as the plaintiff made it, a nonsuit was very properly granted and the judgment will therefore be affirmed.

Affirmed.