## A. B. RAINS *v.* MAXWELL HOUSE COMPANY.

### (*Nashville.* December Term, 1903.)

1. **HOTELS.** Absolute insurers of guest's property under common law.

The innkeeper was, under the common law, an absolute insurer of the property of his transient guest. (*Post, pp.* 223-224.)

2. **SAME.** Construction of statute relieving from liability for loss of guest's property.

While the statute relieving the proprietors of hotels from liability for loss of certain property of guests under certain conditions is in derogation of the common law, and for that reason must be strictly construed, still at the same time it must be construed with reference to its evident object and purpose, namely, the benefit and protection of hotel keepers. (*Post, pp.* 224, 229, 230.)

Cases cited and approved: Rosenplanter v. Rosselle, 54 N. Y., 255; Stewart v. Parsons, 24 Wis., 242.

3 **SAME.** Same. Watch and fob embraced in the words "jewels and ornaments" in statute relieving hotel keepers from liability.

A watch used for a timekeeper or chronometer and the fob attached thereto are embraced in the words "jewels and ornaments" in the statute providing that whenever the proprietor a hotel shall provide a safe for the keeping of any jewels or ornaments belonging to the guests, and the guest does not deposit them there, the proprietor shall not be liable for their loss by theft or otherwise; and under this statute the hotel keeper is relieved from liability for loss. (*Post, pp.* 224-232.)

Acts cited and construed: 1879, ch. 145.

Code cited and construed: Sec. 3593 (S.).

Cases cited and approved: Meacham v. Galloway, 102 Tenn., 419; Hyatt v. Taylor, 42 N. Y., 258; Rosenplanter v. Rosselle, 54 N. Y., 255; Stewart v. Parsons, 24 Wis., 242.

Rains v. Maxwell House Co.

Cases cited and distinguished or disapproved:   Ramaley v. Le-
land, 43 N. Y., 539; Berstein v. Sweeney, 33 N. Y. Super. Ct.,
276; Gile v. Libby, 36 Barb. (N. Y.), 77; Maltby v. Chapman, 25
Md., 310; Murchison v. Sergent, 69 Ga., 207.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County.
—JOHN W. CHILDRESS, Judge.

JAMES A. RYAN, for plaintiff.

CHARLES C. TRABUE, for defendant.

MR. JUSTICE WILKES delivered the opinion of the
Court.

This cause was commenced before a justice of the
peace.   It was tried before the circuit judge on appeal,
on an agreed statement of facts, without the intervention
of a jury.

The agreement is in the following words:   "In this
cause it is agreed and stipulated by and between coun-
sel representing plaintiff and defendant that the follow-
ing facts are true, and that the same are all the ma-
erial facts involved in the litigation, and that the same
may be treated in all respects on the trial of this case
as competent and uncontradicted testimony:

Rains v. Maxwell House Co.

"On July 13, 1902, A. B. Rains, the plaintiff in this case, accompanied by his wife and daughter, a young lady, left their home at Columbia, Tennessee, and stopped at Nashville, on their way to Bon Aqua Springs for a vacation. The party arrived at Nashville on July 13th, in the evening, and registered as guests at the Maxwell House. The Maxwell House Company, the defendant in this case, is a corporation, chartered under the laws of Tennessee, engaged in a general hotel business.

"The train for Bon Aqua Springs left Nashville at 7 o'clock in the morning, and the party left a call at the office of the defendant company for 5:30 a. m. the next morning.

"Mr. and Mrs. Rains occupied one room, and their daughter, Miss Rains, an adjoining room.

"On retiring, Mr. Rains placed his watch under his pillow, and, awakening at 4:30 o'clock on Monday morning, looked at it to ascertain the time. The bell boy in the employ of defendant company called Mr. Rains at 5:30 a. m., according to instructions. Whereupon Mr. Rains arose and dressed, and went down to the office and settled his bill.

"Before leaving his room he told his wife that he would have a boy sent up for the hand baggage, and that he would go to the dining room and order breakfast for three, which he did, and his wife and daughter shortly thereafter joined him at the table.

"After the party had been at the table not exceeding

fifteen minutes, Mr. Rains discovered that he had left. his watch in his room. He went to the rotunda railing and called to the office to send the porter up for the watch. Mr. Rains then went back to the dining room,. waited a few minutes, looked at the clock, and saw that. it was within a few minutes of the time for the departure of his train. He hurriedly returned to his room, and: found the porter in the act of looking for his watch. The watch was not found, and has not since been recovered by him. He then went hurriedly down and joined his wife and daughter, and caught a car for the depot. The bell boy who gave Mr. Rains his grips, and who heard: the porter talking about it said: 'I could not have gotten the watch, as your wife was in the room when I got the grips.' This conversation occurred when they were getting on the car. Mrs. Rains and Miss Rains both state that they were not in the room at the time the boy got the grips, but were outside in the hotel passage. The room was unlocked when the . porter reached it. Mrs. Rains and Miss Rains had kept the door locked while they were in the room, as all of their valuable jewelry was in their grips. The watch was. never returned or found.

"It was a watch without jewels.

"The Maxwell House Company had posted within the room occupied by Mr. and Mrs. Rains, and also in the room occupied by Miss Rains, a conspicuous notice that it had provided a safe and vault, etc., in accordance with the Act of 1879, p. 185, c. 145, being section 3593

of Shannon's Compilation of the Laws of Tennessee,. which statute is as follows:

" 'Whenever the proprietor of any hotel or inn shall provide a safe in the office in such hotel or inn or other convenient place for the safe-keeping of any money, jewels or ornaments belonging to the guests of such hotel or inn, or for any samples of merchandise of any kind carried by drummers or commercial travelers, and shall notify the guests thereof by posting a notice stating the fact that such safe or other convenient place in which money, jewels, ornaments or samples might be deposited, in the room or rooms occupied by such guests in a conspicuous manner, if such guest shall neglect to deposit such money, jewels, ornaments or samples of merchandise in such safe or other convenient place, the proprietor shall not be liable for any loss of such money, jewels, ornaments or samples of merchandise sustained by such guests by theft or otherwise.'

"It is further stipulated and agreed that the value of the watch lost or stolen from Mr. Rains was $100, which was its reasonable market value, and that the fob attached to said watch was reasonably worth $10, its market value, making a total of $110, for which he sues.

"It is agreed that all of the hotel officials and employees testified that they did not take the watch or fob in controversy, and knew nothing about it."

This is all the evidence in the case.

The common law, as well understood, is that an inn-

keeper is an absolute insurer of the property of his transient guest, and under that rule the hotel company would be liable in this case.

The sole question, therefore, is a proper construction of the Act of 1879, page 185, chapter 145, which, under the conditions named in the act, exempts the hotel keeper from liability for any money, jewels, ornaments, or samples of any kind carried by drummers or commercial travelers.

We think it very clear that none of the terms used in the statute embraces a watch, unless it be the term "jewels."

The statute, being in derogation of the common law, must be strictly construed, but at the same time with reference to the evident object and purpose, and only such articles as are named can be considered as coming within its provisions.

In the case of *Ramaley* v. *Leland,* 43 N. Y., 539, 3 Am. Rep., 728, it is said: "A watch and chain are not jewels within a statute relieving hotels from liability for loss of money, jewels or ornaments of guests when they have provided a safe for the deposit of such."

The same was held in the case of *Berstein* v. *Sweeny,* 33 N. Y. Super. Ct., 276, which quotes with approval Webster's definition of a jewel, as "an ornament of dress in which the precious stones form a principal part."

In the case of *Gile* v. *Libby,* 36 Barb. (N. Y.), 77, the court held: "The watch and pen and pencil case are certainly valuable, and perhaps might be called jewels,

but I think should be considered a part of the traveler's personal clothing or apparel.   The legislature certainly did not expect the traveler, after retiring, to send down his ordinary clothing or apparel to be deposited in the safe."

It was also held that a reasonable amount of money for traveling expenses and articles for personal use and convenience, though within the terms of the statute, are not within its spirit, and that a guest by retaining such articles in his own possession, instead of depositing them with the innkeeper, does not absolve the innkeeper from his common-law liability.   See, also; 16 Am. & Eng. Ency. Law (2 Ed.), p. 543.

In the case of *Maltby* v. *Chapman,* 25 M'd., 310, it was held that a guest was not bound to deposit with the innkeeper for safe-keeping a watch or a sum of money amounting to $90.

Under a Georgia statute which specifies "valuable articles," it was held that a guest cannot be required to deposit a watch of reasonable value worn by him, and a reasonable sum of money had by him for the purpose of paying his traveling expenses. *Murchison* v. *Sergent,* 69 Ga., 207, 47 Am. Rep., 754.

And the court in that case said:    "Even if notice had been published to him, according to law, to deposit valuables in another place, it would not apply to traveling money, nor a watch of reasonable amount and value."

In the case of *Ramaley* v. *Leland,* supra, the court,
112 Tenn—15

construing the words of the statute, which are the same
as the words of our statute, said:

"The words of the statute must be taken in their ordi-
nary sense, in the absence of any indication that they
were used either in a technical sense or in a sense other
than that in which they are properly used. A watch is
neither a jewel nor an ornament, as these words are
used and understood either in common parlance or by
lexicographers. It is not used or carried as a jewel or
ornament, but as a timepiece or chronometer, an article
of ordinary wear by most travelers of every class, and
are of daily and hourly use by all. It is as useful and
necessary to the guest in his room as out of it, in the
night as in the day time. It is carried for use and con-
venience, and not for ornament; but it is enough that it
is neither a jewel nor ornament in any sense in which
these words have ever been used."

In the case of *Gile* v. *Libby,* supra, the facts were that
the plaintiff's watch, pencil, pencil case, and $25 in
money were stolen. The court said, in construing the
first section of the act: "We must look at the whole of
it; and doing so, I think it plain that the exemption was
intended to apply only to such amount of money and to
such jewelry, ornaments, and valuables as the landlord
or hotel keeper himself, as a prudent person traveling,
would put in a safe, if convenient, when retiring at night.
Can any suppose that it was the intention of the act to
exempt the hotel proprietor for his common-law liabil-
ity, unless the traveler emptied his pockets of every cent

of money and deposited it with his watch and his pencil case in the safe, both of which last-mentioned articles he might have occasion to use after retiring to his room? This would be not only exempting hotel keepers from their extraordinary liability, but requiring extraordinary diligence from their guests. In my opinion, at this day, the traveler putting up at a respectable hotel, who on retiring at night should think of taking from his pockets and depositing in the safe such a sum as $25 only or his watch and gold pen and pencil case, would be considered not only extraordinarily but ridiculously prudent."

In the case of *Maltby* v. *Chapman*, supra, the plaintiff's watch, watch guard, pocketbook, and $90 in money were stolen during the night. The Maryland statute then in force provided that guests should deposit money, plate, and jewelry for safe-keeping. The plaintiff recovered judgment for all of the property. The court said: "The evidence here shows that the articles stolen from the room of the appellee, the guest of the appellant, were a watch, watch guard, and pocketbook and $90 in money, and looking to the purpose and the terms of these provisions of the Code, it is manifest that a compliance with them could not relieve the appellant from liability for the loss thus shown. All of these articles, with the exception of the money, were of a class not within the statutory provisions referred to, and the appellant could not even, by complying with their requirements exempt himself from liability for their loss."

These cases, by their reasoning, indicate that the inn-keeper, even under provisions of a statute such as our own, would still be held liable for the loss of a watch, al-though it was kept by the guest in his room and about his person. But the authority of these cases is very much shaken, if not entirely overthrown, by subsequent cases from the New York courts.

In the case of *Hyatt* v. *Taylor*, 42 N. Y., 258, there was a suit to recover certain money, two gold studs, and two gold pens. The lower court instructed the jury that notwithstanding the statute, the guest would be entitled to retain such articles as were of ordinary use and con-venience, and it was left to the jury to apply this rule. The verdict was in favor of the plaintiff for $190. The loss occurred in New Jersey, the law of which state was identical with that of New York, and covered "money, jewels and ornaments." The appellate court reversed the case, and in its opinion said: "If the legislature of New Jersey intended to relieve the innkeeper from re-sponsibility for the loss of any money, jewels, or orna-ments, in what words was it possible to more clearly ex-press their intention? It would have been mere tautol-ogy to have added the words for 'any money, without any exception.' The presumption [that some money was to be exempt] is derived solely from the alleged incon-venience of requiring the guest to conform to the require-ments. If it be asked, could the legislature have in-tended that on entering a hotel the guest should strip himself of all money, jewels, and ornaments, or be with-

out protection, it may be answered, the guest walks the streets, he visits places of public resort or amusement, or the places to which his business calls him, and he enters his own abode, and takes with him to each, without any special guaranty of safety, so much money, jewels, or ornaments as he sees fit, and the hardship is not great if his entrance or his stay at a hotel places him ·in no worse condition. No rule of public policy, no necessity, no violation of right, no evidence of intent derivable from the terms of the statute or from its design, permits in this case a restriction of its plain and explicit language."

In the case of *Rosenplanter* v. *Rosselle*, 54 N. Y., 255, the court, commenting upon the cases of *Gile* v. *Libby* and *Hyatt* v. *Taylor*, supra, said: "The law is now settled in this State that if a guest, on retiring to bed at night, removes a watch or jewelry from his person, or leaves money in his pocket, and neglects to deposit the same in the safe provided for that purpose, he cannot hold the landlord liable for the loss of same, provided the notice required by the statute has been posted in his room. However inconvenient or troublesome it may be to make the deposit, it must be made, or else the landlord has the protection of the statute. The true rule is that as above stated: that it is the duty of the guest to make the deposit whenever he has time and opportunity to do so. This rule may be inconvenient to guests; but the statute was not intended for their benefit; it is manifestly enacted for the protection of hotel keepers."

In *Stewart* v. *Parsons,* 24 Wis., 242, a gold watch and chain had been lost.  The lower court followed the early New York cases, and held the innkeeper liable; but the supreme court reversed the lower court, saying:  "The court below doubtless thought that the law was not intended to apply to and include a watch and chain worn by a guest on his person.  It seems to us, however, that there is no satisfactory reason for saying that the property lost does not come fully within the language and intent of this enactment.  The statute, in substance, provides that no innkeeper in this State  who  shall  constantly have in his inn an iron safe in good order, and suitable for the safe custody of money, jewelry, and articles of gold and silver manufacture and the like, shall be liable.  The object of this law is very manifest.  It is intended to limit and restrict the liability  of  an  innkeeper at common law or by custom of the loss of the goods of his guests committed to his care."

In this case the case of *Gile* v. *Libby,* supra, is criticized, and the case of *Hyatt* v. *Taylor,* supra, is approved.

The case of *Murchison* v. *Sergent,* supra, did not involve a construction of a statute at all, since it was expressly found that no notice had been given the guest as required by law.  The court said obiter:  "Even if notice had been published to him, according to law, to deposit valuables in another place, it would not apply to traveling money and a watch of reasonable value;" cit-

ing the Maryland and earlier New York cases, to which we have adverted.

In *Meacham* v. *Galloway*, 102 Tenn., 419, 52 S. W., 859, 46 L. R. A., 319, 73 Am. St. Rep., 886, this court said: "It was conceded on the trial that the watch and chain should have been deposited in the safe in compliance with notices to that effect posted in the room, and that no recovery could be had for the loss of the watch and chain."

The question at issue in this case, however, was not adjudged in that.

We think that the watch and fob must be considered as embraced in the terms "jewels and ornaments."

Mr. Webster defines the word "jewel" as an ornament of dress, usually made of a precious metal, having enamel or precious stones as a part of its design; but we are of the opinion that the sense in which it was used by the legislature is the common meaning attributed to it as an ornament, or useful article of value, and embraces a watch used for a timekeeper or chronometer, and in which precious stones may or may not form a part. The fob is evidently an article kept and worn both for use and ornament.

If a guest sees proper to keep his watch and his fob and money upon his person or in his room, he does so at his own risk, just as he keeps it about his own person and in his possession when not in the hotel or inn. If he desires for his own safety or inconvenience to place the responsibility for its safe-keeping upon the hotel

company during his stay in the hotel as a guest, then he must place it in the safe which the statute requires to be provided by the innkeeper for that purpose.    We can put no other construction upon the statute, without nullifying wholly or to some extent its provisions.

It may be inconvenient to deposit small sums of money and pieces of jewelry of little value in the safe of a hotel, and it may be inconvenient to do without their use in the room during the stay of the guest; but this is a condition under the statute, upon which the hotel keeper can alone be made liable for their safety as an insurer.

If the guest desires to avoid these inconveniences, he may retain possession of his money and his jewelry, just as if he were not a guest of the hotel.

We are of the opinion, therefore, that there is no error in the judgment of the trial court, and it is affirmed, with costs.