Bertha BREWER

v.

ROOSEVELT MOTOR LODGE.

Supreme Judicial Court of Maine.

Oct. 17, 1972.

Daviau & Geller, by Jerome G. Daviau, Waterville, for plaintiff.

Robert W. O'Connor, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On October 24, 1968 the female plaintiff, a paying guest and resident at the defendant Roosevelt Motor Lodge since January of that year, had taken a bath about 11:00 o'clock that evening and had retired shortly thereafter. Prior thereto, however, she had left her bathroom window open "to let the steam out, as it was very warm, as I always did, drawing the curtains." The defendant's motel had forty rooms all on the ground floor located on either side of a long hallway, at the front of which was a lobby where a clerk was in attendance at all times. Below these guest-rooms and underground were a large dining room, kitchen, bar and larger rooms for private parties. The window which the plaintiff left open could have been locked and the air-conditioning unit with which Mrs. Brewer's room was equipped, if operated, would have removed the vapors from the bathroom. While the plaintiff was asleep, a male intruder gained entrance to the room by removing the half screen on the bathroom window and climbing in through the open window. The bathroom screen had no locking device. Following this intrusion, Mrs. Brewer was assaulted and raped and her diamond wristwatch disappeared in the process.

The plaintiff in the instant action sought damages for her physical and mental injury arising out of the assault and rape and for the consequential losses attributable thereto. She bottoms her right of recovery upon the alleged negligence of the defendant corporation in failing to provide adequate security precautions for the plaintiff's safety, or, alternatively, in failing to give adequate notice of the insufficient security provisions made for guests at the motel. She bases her right to damages for the loss of her watch upon the common law absolute liability of innkeepers.

At the close of the plaintiff's evidence at trial before a jury, both parties presented motions for a directed verdict pursuant to Rule 50(a), M.R.C.P. The Justice below granted the defendant's motion while denying that of the plaintiff. The instant appeal challenges the propriety of that ruling. The appeal must be denied.

We have stated the general policy to be followed by trial Justices when faced with motions for a directed verdict under Rule 50(a). Moore v. Fenton, 1972, Me., 289 A.2d 698 at 700 (footnote 1). We there indicated that the direction of a verdict should be granted sparingly as the exception rather than the rule and only when the correctness of such a ruling is so clear that all reasonable doubts of possible error or uncertainty have been removed in the justice's mind. Undoubtedly, the presiding Justice so felt about his decision on the motion.[1]

1. In the instant case, it does happen that the presiding Justice was right in his ruling, but the issue was sufficiently complex to raise reasonable doubts of possible error and uncertainty. In such circumstances, the jury should have been given the opportunity to return a verdict, with the right in the presiding Justice to nullify the same by judgment n. o. v.; this process permits the reinstatement of the jury verdict, should there be trial error in the ruling on the motion, without the necessity of a second trial.

The plaintiff argues that the defendant's failure to provide locking devices on the screens of its motel rooms or bars on the windows, to fence off its establishment from easy access by members of the general public, to install the most modern television monitoring system inside the hallways of the motel as well as on the outside of the complex, to maintain guards on the adjacent grounds or, in the alternative, its omission to give notice to its patrons of these alleged security inadequacies, was sufficient evidence of conduct which a jury might determine to be negligent conduct which proximately caused the plaintiff's injuries. We disagree with such contention as applied to the evidence in the instant case.

The burden is on the plaintiff to introduce sufficient evidence of actionable negligence on the part of the defendant which would authorize a favorable finding to that effect by the jury. In Torrey v. Congress Square Hotel Co., 1950, 145 Me. 234, 75 A.2d 451, this Court said that it was not negligence per se to have a floor of two levels in a hotel cocktail lounge; so also in this case, it was not negligence per se not to provide locking devices on the half screens with which the motel rooms were equipped.

The common-law test of duty is the probability or foreseeability of injury to the plaintiff. The risk reasonably to be perceived within the range of apprehension delineates the duty to be performed and the scope thereof. Connolly v. Nicollet Hotel, 1959, 254 Minn. 373, 95 N.W.2d 657, 74 A.L.R.2d 1227; Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 344, 162 N.E. 99, 100, 59 A.L.R. 1253.

In Quinn v. Moore, 1972, Me., 292 A.2d 846, at 850, this Court said:

"The reasonable foreseeability of injury to others from one's acts or from one's failure to act raises a duty in law to proceed in the exercise of reasonable care. It is not necessary that the precise type of injury be foreseen nor the specific person injured. The orbit of danger may be undefined in terms of time, space or persons. Nevertheless, if a reasonably prudent and careful person should have anticipated under all the existing circumstances that a person in the situation of the plaintiff would probably be injured as a proximate result of the negligent conduct of the defendant, then such risk of injury reasonably to be apprehended raises the legal duty to proceed in the exercise of reasonable care commensurate with the danger of injury in order to avoid the same."

This rule has been recognized with respect to liability of the proprietor of a theater or amusement enterprise to his guests, where this Court said that he must guard them not only against dangers of which he has actual knowledge but also against those which he should reasonably anticipate. Hawkins v. Maine and New Hampshire Theaters Co., 1933, 132 Me. 1, 164 A. 628. The same rule has been applied to the operator of tourist or overnight cabins with respect to liability of the operator in the maintenance of the grounds surrounding the cabins. Walker v. Weymouth, 1958, 154 Me. 138, 145 A.2d 90. The scope of the duty was said to encompass wilful or negligent acts of third persons intervening and contributing to the injury, provided such acts should have been reasonably foreseen or anticipated. *Hawkins, supra.*

We find this rule to be in accord with the prevailing doctrine to the effect that a proprietor of an inn, hotel, motel, restaurant, or similar establishment is liable for an assault upon a guest or patron by another guest, patron or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution. Kimple v. Foster, 1970, 205 Kan. 415, 469 P.2d 281; 40 Am.Jur.2d, Hotels, Motels, Etc., § 112, p. 987.

While the proprietor of such an establishment is bound to exercise reasonable care to prevent personal injuries to his patrons by other persons who are in no way connected with the business and the standard of care required is always the conduct of an ordinarily prudent person, nevertheless, the standard of conduct required is graduated according to the danger attendant upon the activities of the business pursued and depends upon the facts and circumstances surrounding each particular case. Hughes v. Coniglio, 1946, 147 Neb. 829, 25 N.W.2d 405.

■■■■■ Actionable negligence is a prerequisite for recovery in an action for personal injury negligently inflicted. To be actionable, negligence must be the proximate cause of the injury complained of. Reasonable foreseeability of injury is the foundational basis for proximate causation. Thus, when the injury for which damages are sought is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable for the same.

A review of the evidence clearly shows that the plaintiff did not bring herself within the rule which would permit recovery. She failed to prove actionable negligence. The assault committed upon her by her assailant, a person completely unconnected with the motel, under the instant record permits no other conclusion except that it was a new and intervening cause altogether disassociated with any act of omission or commission on the part of the defendant. Nixon v. Royal Coach Inn of Houston, 1971, Tex.Civ.App., 464 S.W.2d 900.

To secure the protection of the persons of guests at the motel, the defendant had equipped the motel room doors with a chain lock and a lock in the handle. The bathroom window through which the plaintiff's assailant made his intrusion had a plainly visible slide lock on it. An operating air conditioner was available to remove the post-bath vapors in the bathroom or to keep the unit at a comfortable temperature for sleeping purposes without the necessity of having an open and unlocked window through the night.

■■■■■ In this posture of the evidence, the issue was whether the defendant as an ordinarily prudent person had reasonable cause to anticipate that the security measures taken for the plaintiff's protection were inadequate to meet any reasonably foreseeable harm. The only evidence produced at trial relative to the foreseeability of intruders consisted of a single incident when, on a previous occasion the time of which does not appear, two young boys broke into the hallway of the motel for the purpose of rifling the motel's cash box. There was no evidence of any previous attempt to break into any room of the motel, nor into any other motels in the area, nor was there any evidence that the neighborhood was an area where burglaries were prevalent.

We recognize that the plaintiff was the victim of a despicable and extremely painful experience. However, we must conclude that the defendant was under no obligation to anticipate the isolated, wilful and furtive movements of a burglar-rapist whose nefarious tendencies were apparently activated by the plaintiff's failure to secure her premises with the security equipment provided by the defendant. The defendant had no warning whatsover that such an intrusion as did happen was likely to take place. The danger was not one which it was bound to have foreseen or to have guarded against. The Justice below found that under the circumstances of this case there was no such duty as a matter of law to protect the plaintiff's person against burglarious assaults through windows kept open at night by guests, nor to provide locking screens or bars over the windows, nor to erect high walls around the premises or install modern television monitoring systems. The defendant motel proprietor owed his guests and patrons the duty to exercise reasonable care for their personal safety, but it was not an insurer under any and all circumstances. No liability attach-

es until it be shown that a duty owed to the plaintiff was breached and that the particular breach was a proximate cause of the injury. Nixon v. Royal Coach Inn of Houston, supra. In this, the plaintiff has failed.

*The loss of the watch*

 Absent statutory regulations limiting their liability, innkeepers and hotel keepers are by the common law insurers of the property of their guests committed to their care and are liable for its loss by theft or otherwise, or for injury to it, except when caused by the act of God, the public enemy, or the neglect or fault of the guest or his servants. And the liability extends to all types of personal property of the guest, including moneys and watches, which are placed within the inn or hotel, and is not limited to such as are reasonably necessary for the current use of the guest. Wagner v. Congress ⸝Square Hotel Co., 1916, 115 Me. 190, at 191–192, 98 A. 660; Levesque v. Columbia Hotel, 1945, 141 Me. 393, 44 A.2d 728.

The evidence disclosed that the defendant motel corporation was "duly licensed" as an innkeeper within the City of Waterville and that its bond, purportedly given

pursuant to 30 M.R.S.A. § 2753,[2] was approved by the licensing board of Waterville under 30 M.R.S.A., § 2752. Thus, were it not for our present statute regulating the nature and extent of liability for loss or injury to guests' property (30 M.R.S.A., §§ 2901, 2902, 2903 and 2904), the defendant's responsibility in the instant case for the loss of Mrs. Brewer's watch would be unquestionable.

But, our Court in *Wagner*, supra, stated that the then 1913 statute is a comprehensive one. It was intended by the Legislature to substitute for the former legislation on the subject. It has remained the same to the present day, except for unsubstantial changes in phraseology, to the extent that the immunities set up for the protection of operators of inns, hotels and the like, might need to be upgraded to reflect the present inflationary status of the economy as compared to 1913 values. But these concerns are not those of the Judiciary, but rest within the realm of legislative action.

 Our present Act displaces the common law except where, within the statutory ceiling of liability, the common law remains operative. Section 2901,[3] as interpreted by

2. 30 M.R.S.A. § 2753. Bond
 "No person shall receive his license as an innkeeper or victualer until he has given his bond to the treasurer, to the acceptance of the licensing board granting it, with one or more sureties in the penal sum of $300, in substance as follows, namely:
 Know all men that we . . . . . . . . . ., as principal, and . . . . . . ., and . . . . . . . . . ., as sureties, are held and stand firmly bound to . . . . . . . . . ., treasurer of the town (or city) of . . . . . . . . . ., in the sum of three hundred dollars, to be paid to him, or his successor in said office; to the payment whereof we bind ourselves, our heirs, executors and administrators, jointly and severally by these presents. Sealed with our seals. Dated the . . . . . . . day of . . . . . . . . . ., in the year nineteen hundred and . . . . . . . . .
 The condition of this obligation is such that, whereas the above bounden . . . . . . . . . . has been duly licensed as a . . . . . . . . . . . within said town (or

city) until the day succeeding the first Monday of May next; now if in all respects he shall conform to the provisions of law relating to the business for which he is licensed, and to the rules and regulations as provided by the licensing board in reference thereto, and shall not violate any law of the State relating to intoxicating liquors, then this obligation shall be void, otherwise shall remain in full force."

3. 30 M.R.S.A., § 2901. Liability for loss where safe provided
 "No innkeeper, hotel keeper, or boardinghouse keeper who constantly has in his inn, hotel or boardinghouse a metal safe or suitable vault, in good order and fit for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers and bullion, and who keeps on the doors of the sleeping rooms used by guests suitable locks

this Court in *Wagner*, supra, limits the innkeeper's liability to $300 for the loss of any of the articles or property of the kind specified therein and this, whether the conditions of the section respecting safe, vault, locking doors, windows and transoms, the posting of the law itself, have been complied with or not. The property covered by section 2901 includes the guest's money, bank notes, *jewelry*, articles of gold and silver manufacture, precious stones, *personal ornaments*, railroad mileage books or tickets, negotiable or valuable papers and bullion.

Section 2902 [4] permits the innkeeper to make special arrangements to receive for deposit in the safe or vault *any* property upon such terms as they may in writing agree. But, under this section, liability for loss of the articles or property accepted for deposit under section 2901, where all the conditions of section 2901 have been met, within the limit of $300 as provided by section 2901 (exclusive of the situation where by specific terms a different arrangement is made in writing between the innkeeper and his guest), is not that of absolute liability under the common law, but the innkeeper is liable for theft or negligence on his part or that of any of his servants.

Section 2903 deals with liability of an innkeeper to a person intending to be a guest of *any* inn, where the prospective guest's baggage or other articles of property are delivered for safekeeping *elsewhere than in the room assigned to the guest*. Responsibility for loss is made dependent upon the negligence of the innkeeper or of his servants or employees. There are no monetary limits attached to this section, and it clearly dispels any notion that any common law rule of absolute liability might be invoked. With this section, we are not concerned in the present case.

Section 2904 [5] determines the responsibility of any innkeeper for loss of or injury to his guest's personal property other than the

---

or bolts, and on the transoms and windows of said rooms suitable fastenings, and who keeps a copy of this section printed in distinct type constantly and conspicuously posted in not less than 10 conspicuous places in all in said hotel or inn, shall be liable for the loss of or injury to any articles or property of the kind above specified suffered by any guest, unless such guest has offered to deliver the same to the innkeeper, hotel keeper or boardinghouse keeper for custody in such metal safe or vault and the innkeeper, hotel keeper or boardinghouse keeper has omitted or refused to take said property and deposit it in such safe or vault for custody and to give such guest a receipt therefor. The keeper of any inn, hotel or boardinghouse shall not be obliged to receive from any one guest for deposit in such safe or vault any property hereinbefore described exceeding a total value of $300, and shall not be liable for any excess of such property, whether received or not."

4. 30 M.R.S.A., § 2902. Special arrangement to receive deposits
 "Any such innkeeper, hotel keeper or boardinghouse keeper may, by special arrangement with a guest, receive for deposit in such safe or vault any property upon such terms as they may in writing agree to. Every innkeeper, hotel keeper

or boardinghouse keeper shall be liable for any loss of the above enumerated articles of a guest in his inn, hotel or boardinghouse after said articles have been accepted for deposit, if caused by the theft or negligence of the innkeeper, hotel keeper, boardinghouse keeper or any of his servants."

5. 30 M.R.S.A., § 2904. Nature of liability; limit
 "The liability of the keeper of any inn or hotel for loss of or injury to personal property placed by his guests under his care, other than that described in sections 2901 to 2903 shall be that of a depository for hire, except that in case such loss or injury is caused by fire not intentionally produced by the innkeeper or his servants, such keeper shall not be liable. In no case shall such liability exceed the sum of $150 for each trunk and its contents, $50 for each valise and its contents and $10 for each box, bundle or package and contents, so placed under his care, and for all other miscellaneous effects including wearing apparel and personal belongings, $50, unless he shall have consented in writing with such guest to assume a greater liability. Whenever any person shall suffer his baggage or property to remain in any inn, hotel or boardinghouse after leaving the same as a guest, and

property described in sections 2901, 2902 and 2903 and unequivocally states that liability within the limits therein provided shall be that of a depository for hire (excepting losses by fire not intentionally produced by the innkeeper or his servants). This section permits an innkeeper to assume greater liability by agreement in writing. It also covers property of the guest kept by the innkeeper after the relationship of innkeeper and guest has ceased or property received by him prior to the inception of the relationship, where the holding of the baggage or property may be, at the option of the innkeeper, at the risk of the owner. It is to be noted that section 2904 is general in scope and covers *all* innkeepers.

■■■■■ The plaintiff contends that the defendant corporation never qualified for the statutory exemption from the common law rule of absolute liability, because, although licensed as an innkeeper, it never furnished the proper bond pursuant to 30 M.R.S.A., § 2753. See footnote 2, supra. The bond revealed that no corporate seal was affixed to it, nor that any surety or sureties, as required by the statute, subscribed the same. Assuming for the purposes of this decision that the bond was statutorily insufficient for the failure to have the corporate seal [6] and for the absence of sureties thereon [see, Irving v. City of Highlands, 1898, 11 Colo.App. 363, 53 P. 234], nevertheless, we conclude that the plaintiff's contention must fail. A violation of 30 M.R.S.A., §§ 2751 to 2754 subjected the corporation to the possible recovery of penalties against it in favor of the municipality.[7] Proper licensing pursuant to statute was not included as one of the required conditions under which the exemption from common-law absolute liability was granted to innkeepers in case of loss of or injury to their guest's property. The legislative language is clearly to the contrary.

■■■■ Thus, before she can recover the maximum amount of $300 under the terms of the statute for her diamond wrist watch regarding which she testified to a fair market value of approximately $400 at the time of loss on the theory of common-law absolute liability because the defendant innkeeper had not complied with the conditions of section 2901, the plaintiff must bring herself within the terms of that section. Otherwise, her recovery would be governed by the limitations of section 2904. The plaintiff's diamond wrist watch, to be covered under section 2901, must be either "jewelry" or a "personal ornament." The evidence does not reveal of what metal manufacture the watch was; we cannot surmise or conjecture that it might be an article of gold or silver manufacture as described in the reference section.

In Ramaley v. Leland, 1871, 43 N.Y. 539, 3 Am.Rep. 728, the New York Court said:

"A watch is neither a jewel or ornament, as these words are used and under-

---

after the relation of keeper and guest between such guest and the proprietor of such inn or boardinghouse or hotel has ceased, or shall forward the same to such inn, hotel or boardinghouse before becoming a guest thereof, and the same shall be received into such inn or boardinghouse or hotel, such innkeeper may at his option hold such baggage or property at the risk of such owner."

6. This bond was executed on May 6, 1968 and the provisions of 1 M.R.S.A., section 72, subsection 26–B, enacted by P.L.1970, c. 590, section 2, effective February 10, 1970 establishing the sufficiency of corporate sealed instruments without the corporate seal, would not apply in this case.

7. 30 M.R.S.A., § 2751. License required
 "No person shall be a common innkeeper or victualer without a license, under a penalty of not more than $50."
 30 M.R.S.A., § 3001. Prosecutions
 "The licensing board shall prosecute for any violation of sections 2751 to 2754 and 2851 to 2854 that comes to its knowledge, by complaint, indictment or civil action. All penalties recovered shall inure to the town where the offense is committed. Any citizen of the State may prosecute for any violation of the said sections in the same manner as the licensing board may prosecute."

stood, either in common parlance or by lexicographers. It is not used or carried as a jewel or ornament, but as a time-piece or chronometer, an article of ordinary wear by most travelers of every class, and of daily and hourly use by all. It is as useful and necessary to the guest in his room as out of it, in the night as the day-time. It is carried for use and convenience and not for ornament. But it is enough that it is neither a jewel or ornament in any sense in which these words have ever been used."

In Kennedy v. Bowman Biltmore Hotel Corporation, 1935, 157 Misc. 416, 283 N.Y.S. 900, it was held that a wrist watch while ornamented with diamonds was primarily an article of daily use and not a jewel, ornament, or precious stone within the meaning of the New York statute which used similar terminology as our own Act.

The Nebraska Court in Leon v. Kitchen Bros. Hotel Co., 1938, 134 Neb. 137, 277 N.W. 823, 115 A.L.R. 1078, after citing Wagner v. Congress Square Hotel Co., supra, with approval, reached the same result as did the New York Court in the case of a lady's platinum diamond wrist watch. It concluded that if the Legislature had intended to include in that part of the statute an article of such general and common use as a watch, it would have used the word "watch" and not relied on the terms "jewelry" and "personal ornaments." We fully agree. We are aware that the Tennessee Court has ruled to the contrary. Rains v. Maxwell House Co., 1904, 112 Tenn. 219, 79 S.W. 114, 64 L.R.A. 470, 2 Ann.Cas. 488.

By this conclusion we do not suggest that a given article is, ipso facto, precluded from qualifying as "jewelry" or "personal ornaments" solely because it includes a "watch." A time-piece might be designed and arranged as a part of an item such that it, and its practical function of telling time, are truly incidental to a manifestly predominant overall purpose of the article as an adornment—in which situation it might legitimately qualify as "jewelry" or "personal ornament" within the meaning of the pres-

ent statute. On the other hand, that which in its objective nature is revealed as primarily and essentially aimed at the practical function of telling time and, is, therefore, basically a "watch" does not become transformed into "jewelry" or a "personal ornament", for purposes of the present statute, solely because it might be rendered interesting or unusual by some accompanying decoration even in the form of precious stones.

The criterion of judgment, therefore, is the predominant function of the article as disclosed objectively by its nature, construction and assemblage.

■ Our conclusion in the instant situation is that the evidence is insufficient—insofar as it has shown the article here involved to be only a "diamond wrist watch" of market value of approximately $400.00 at the time of the loss—to sustain the ultimate burden of proof reposing upon plaintiff to establish that the article was "jewelry" or a "personal ornament" because its predominent function was other than that normally conveyed by the basic designation that it was a "watch"—a mechanism to serve the utilitarian function of providing its wearer with information as to the time of day.

Since the plaintiff's wrist watch did not come within any of the types of property enumerated in sections 2901, 2902 or 2903 of the statute, it came within the terms of section 2904 which limits the responsibility of the innkeeper to that of a depository for hire, and in the case of miscellaneous effects including personal belongings to the limit of $50. As stated in Wagner v. Congress Square Hotel Co., supra, at page 195 of volume 115 of the Maine reports, at page 662 of volume 98 of the Atlantic Reporter, "[a] depositary for hire is liable only for failure to exercise ordinary care, or, as it is sometimes expressed, such care as men of ordinary prudence usually exercise over their own property under like circumstances." The Justice below ruled as a matter of law that there was no obligation on the

part of the defendant innkeeper to anticipate the unforeseeable intrusion of the plaintiff's assailant into her chambers through the open bathroom window and thus there was no breach of due care for which the defendant was responsible in damages either for injuries to her person or for the theft of her property. In this, there was no error.

The entry will be

Appeal denied.

All Justices concurring.