2000 ME 39

**Albert F. KAECHELE**

v.

**KENYON OIL COMPANY, INC., et al.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1999.
Decided Feb. 29, 2000.

Scott J. Lynch (orally), Hornblower & Lynch, P.A., Lewiston, for plaintiff.

Martica S. Douglas (orally), Douglas, Denham, Buccina & Ernst, Portland, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Kenyon Oil Company, Inc., doing business as Xtra Mart, along with its insurers Warren Equities and the Groves Corporation,[1] appeal from the judgment entered in the Superior Court (Androscoggin County, *Fritzsche, J.*) on a jury verdict finding that the negligence of Xtra Mart was a cause of the injuries suffered by Albert Kaechele when he was assaulted at Xtra Mart by another customer. Xtra Mart argues that the trial court made several evidentiary errors and erred when it denied Xtra Mart's motion for a judg-

ment as a matter of law or a new trial. We affirm the judgment.

## I.  BACKGROUND

[¶ 2] Xtra Mart is a 24–hour convenience store located in Auburn. On the evening of May 4, 1994, Albert Kaechele went to the store to purchase a MegaBucks lottery ticket, and to visit his wife, May Kaechele, who was working as an Xtra Mart clerk. Also present in the store that evening were Darlene Mailey, who was also on duty as an Xtra Mart clerk; Valerie Rowe, an off-duty clerk; and Valerie Rowe's husband Armand Rowe, with their six-month-old daughter Tiffany.

[¶ 3] Sometime around 7:45 P.M., Madrid Roddy entered the store and attempted to purchase cigarettes. May Kaechele refused to sell Roddy cigarettes without first examining his identification. Angry at the prospect of having to return home to get his license, Roddy yelled obscenities at May and Mailey and pounded the service counter. He continued for approximately fifteen minutes to object strenuously to the clerks' repeated requests for identification. Eventually, he left the store, slammed the door, and began pounding on the store's front window. Armand, fearful that Roddy might vandalize his vehicle, watched him from the door and suggested that Mailey or May call the police. No call was made at that time. Armand and Albert Kaechele eventually left the store, and a confrontation with Roddy ensued in the parking lot. Words were exchanged, and Roddy struck Kaechele, severely injuring his face. At this point, one of the clerks called the Auburn Police Department, which dispatched an officer to the scene within two minutes.

[¶ 4] Kaechele filed suit to recover for his injuries, naming Roddy, Xtra Mart, Kenyon Oil Company, Inc., the Grove Corporation, and Warren Equities, Inc., as defendants.[2]  The complaint alleged that

---

1.  We refer to the defendants collectively as "Xtra Mart."

2.  Roddy has since been convicted of aggravated assault and has filed for bankruptcy protection.  The U.S. Bankruptcy Court (*Good-*

the negligence of Xtra Mart was a proximate cause of Kaechele's injuries. The jury found that both Kaechele and Xtra Mart were negligent, concluded that Xtra Mart was more negligent, and awarded Kaechele damages. The jury valued his damages at $210,000, but adjusted the award to $168,000 after taking into account Kaechele's own negligence. Xtra Mart moved for a judgment as a matter of law or for a new trial. The motion was denied, and this appeal followed.

[¶ 5] Xtra Mart asserts that the trial court made multiple evidentiary errors. We address only two: (1) whether the court erred in admitting evidence regarding Xtra Mart's previous calls to the Auburn Police Department; and (2) whether the court erred in admitting evidence regarding two Xtra Mart employees' statements to the effect that the assault could have been avoided if they had acted more quickly to summon the police. We also address Xtra Mart's assertion that the court erred in declining to grant a judgment as a matter of law or for a new trial.

## II. DISCUSSION

### A. Evidence of Prior Incidents at Xtra Mart

[¶ 6] Xtra Mart argues that the evidence presented relating to previous calls from Xtra Mart to the Auburn Police Department was not relevant, and that to the extent it had any relevance, it should have been excluded on the basis of M.R. Evid. 403. We review a court's determination of relevance for errors of law as to the factual predicate; that is, as to the bare possibility that the evidence may have any tendency to make the "existence of a fact that is of consequence to the determination of the action" more or less probable. M.R. Evid. 401; *Rich v. Fuller,* 666 A.2d 71, 73

(Me.1995). A fact may, however, be "of consequence" and yet of minimal value. The court's decision regarding the admissibility of relevant evidence therefore "blends imperceptibly into its discretion under Rule 403." Field & Murray, *Maine Evidence* § 401.1 at 91. We review a decision to admit or exclude relevant evidence pursuant to Rule 403 for abuse of discretion because the determination "involves the weighing of probative value against considerations militating against admissibility." [3] *Rich,* 666 A.2d at 73; *see also Jones v. Route 4 Truck & Auto Repair,* 634 A.2d 1306, 1308 (Me.1993). Thus, once the bare fact of relevance is determined, we accord the trial judge significant discretion in determining its admissibility. *See Gurski v. Culpovich,* 540 A.2d 764, 766 (Me.1988).

#### 1. Relevance

[¶ 7] We first determine whether the challenged evidence was relevant to the determination of any fact before the jury. The trial court must undertake an analysis of relevance by first examining the precise cause of action presented by the plaintiff and the elements of proof necessary to the factfinder's decisions on those elements.

[¶ 8] Kaechele's claim of negligence springs from Xtra Mart's duty to exercise reasonable care regarding the safety of its patrons. "[A] proprietor of an inn, hotel, motel, restaurant, or similar establishment is liable for an assault upon a guest or patron by another guest, patron, or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution." *Brewer v. Roosevelt Motor Lodge,* 295 A.2d 647, 651 (Me.1972).[4]

*man, J.*) granted a partial relief from stay, allowing the matter to proceed against the corporate defendants.

**3.** Relevant evidence "may be excluded if its probative value is substantially outweighed by

the danger of unfair prejudice." M.R. Evid. 403.

**4.** *Cf. Bryan R. v. Watchtower Bible & Tract Soc. of N.Y., Inc.,* 1999 ME 144, ¶ 12, 738 A.2d 839, 844 (noting that, although ordinari-

Thus, when a patron has been injured by a third party at an establishment with a duty to act reasonably to protect its patrons, the touchstone of liability will be the notice of the risk, both general and specific, and the exercise, or lack thereof, of reasonable care.

[¶ 9] At trial, there was no real factual dispute regarding the place of the assault (on Xtra Mart's property), the results of the assault (relatively serious injuries to Kaechele's face), or the person who assaulted Kaechele (Roddy). The dispute for resolution by the jury centered on whether Xtra Mart anticipated, or should have anticipated, the assault, and if so, whether Xtra Mart exercised reasonable care to prevent the assault or interfere with its execution.

■■■ [¶ 10] A proprietor must guard its patrons against not only known dangers but also those which it "should reasonably anticipate." *Brewer*, 295 A.2d at 651. Therefore, whether Xtra Mart should have anticipated the assault must be analyzed from two perspectives: first, did Xtra Mart have notice that its facility generally presented a risk that third parties would assault its patrons;[5] and second, did Xtra Mart know, or should it have anticipated, that Roddy would assault a patron on the evening in question. Generally, evidence

of similar incidents in the past will be relevant on the issue of notice. *See Simon v. Town of Kennebunkport*, 417 A.2d 982, 985–85 (Me.1980). When notice is contested in a matter involving allegations of a third-party assault, evidence demonstrating a pattern of prior substantially similar assaults on the premises is relevant on the issue of notice. *See Brewer*, 295 A.2d at 651.[6]

[¶ 11] It was against this backdrop that the trial court was called upon to make its determination of the relevance of prior incidents at the Xtra Mart. After hearing from counsel, the court excluded evidence that it concluded had little probative value, including the specific details of a litany of reasons, unrelated to assaultive or dangerous behavior of third parties, that the police had previously been called to Xtra Mart.[7] It concluded, however, that general evidence regarding the frequency of calls to Xtra Mart and evidence of prior assaults on the premises was relevant.

■■■ [¶ 12] The evidence regarding prior calls to the police was presented by two members of the Auburn Police Department. The officers testified generally that Xtra Mart was the source of many calls, that they regularly responded to calls regarding violence at the store, that Xtra Mart was one of the most frequent sources

ly there is no duty to protect others from the actions of third parties, exceptions include innkeepers).

5.  A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to
     (a) discover that such acts are being done or are likely to be done, or
     (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.
RESTATEMENT (SECOND) OF TORTS § 344 (1965); *see also Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284, 290 (1999); *Weitz*

*v. State*, 182 Misc.2d 320, 696 N.Y.S.2d 656, 660–61 (Ct.Cl.1999).

6.  *See also Reid v. Augusta–Richmond County Coliseum Auth.*, 203 Ga.App. 235, 416 S.E.2d 776, 779 (1992), *quoted in Walker v. Sturbridge Partners, Ltd.*, 221 Ga.App. 36, 470 S.E.2d 738, 741 (1996).

7.  The court excluded a packet of computer printouts from the Auburn Police Department chronicling each call it received from Xtra Mart over several years prior to the incident, concluding that the incidents were not "sufficiently similar" to be relevant on the issue of notice. It also excluded evidence related to a fight in the Xtra Mart parking lot in which one of the combatants received an eye injury, similar to the injury suffered by Kaechele. The injured party sued Xtra Mart, and the jury in that case found no negligence.

of calls in the area, and that not all calls related directly to violence. The court did not err in concluding that the evidence was relevant under Rule 401 because it tended to show that: (1) Xtra Mart was on notice that this type of dangerous behavior was not uncommon at this Xtra Mart location; (2) Xtra Mart had sufficient notice of the risk over time that precautions of some type could have been instituted; and (3) Xtra Mart knew that law enforcement officials were alert to problems at the site and could be called upon to respond promptly in an emergency. These inferences are directly probative on issues of Xtra Mart's notice of the general risk to patrons at its Auburn store, and its exercise or failure to exercise reasonable care to prevent assaults or interfere in their execution. *See Marois v. Paper Converting Mach. Co.*, 539 A.2d 621, 625 (Me.1988).[8] The court did not err in concluding that the proffered evidence was relevant.

### 2. Probative Value vs. Prejudicial Effect

[¶ 13] We turn then to Xtra Mart's claim that the prejudicial effect of the evidence substantially outweighed its probative value. Xtra Mart does not point to any particularly inflammatory information about prior incidents.[9] Rather, it argues that the cumulative evidence of the numerous occasions on which police had been called to this location would tend to make the jury believe that it was a "hotbed of criminal activity or public nuisance." The court was careful to restrict the inquiry to avoid testimony regarding the specific outcomes of previous assaults, particularly one involving serious physical injury. The court did not exceed the bounds of its discretion when it concluded that the probative value of evidence related to prior police calls to this Xtra Mart, as limited by the court, was not substantially outweighed by any possible prejudice that could result from the admission of the evidence.

### B. Opinions of the Xtra Mart Employees

[¶ 14] Xtra Mart also argues that the court abused its discretion when it allowed May Kaechele and Mailey testify to their opinions that the assault would not have occurred had they called the police earlier. Xtra Mart contends that this evidence "usurped the jury's proper role."

[¶ 15] Maine Rule of Evidence 701 establishes the general rule related to lay opinion testimony. A lay witness may testify as to her opinions if "those opinions ... are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." M.R. Evid. 701.[10] More specifically, Rule 704 provides that opinion testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." M.R. Evid. 704. We "defer to the discretion of the presiding justice in making the M.R. Evid. 704 determination and will not disturb the exercise of that discretion 'absent clear abuse of discretion or an error of law.'" *Pierce v. Central Me. Power Co.*, 622 A.2d 80, 83 (Me.1993) (quoting *Minott v. F.W. Cunningham & Sons*, 413 A.2d 1325, 1330 (Me.1980)).[11]

8. Evidence of previous assaults by others would not have been relevant on the existence of Roddy's actual assault on Kaechele. Because there was no dispute that Roddy did in fact assault Kaechele, there was no danger that the jury would impermissibly rely on the evidence of prior assaults to infer that Roddy assaulted Kaechele. Accordingly, no limiting instruction was necessary.

9. *See, e.g., Pelkey v. Canadian Pac. Ltd.*, 586 A.2d 1248 (Me.1991) (finding no error in exclusion of evidence of prior accident involving children which could tend to arouse an emotional reaction on part of jury).

10. *See State v. Miller*, 1999 ME 182, ¶ 8, 741 A.2d 448, 451.

11. *Pierce* involved a negligence claim in which an expert witness testified that the accident was "foreseeable." *Pierce v. Central Me. Power Co.*, 622 A.2d 80, 83. In affirming the trial court's decision to admit the evi-

[¶ 16] May Kaechele and Mailey were asked if they thought the situation could have been avoided had they called the police earlier. Both answered in the affirmative. Although the testimony was presented in the form of a legal conclusion (but for their inaction, the assault may not have occurred), it did not usurp the jury's role. Both individuals were present throughout the events at issue. Both had an opportunity to observe Roddy's actions and to be aware of the amount of time passing. Both were familiar with the response of the police. Although May Kaechele's opinion could have been understood to be self-serving, her relationship to the injured party alone did not require the exclusion of her statement. *See* M.R. Evid. 601; *see also State v. Smith*, 400 A.2d 749, 755 n. 6 (Me.1979) (recognizing that self-serving testimony is not inadmissible for that reason and suggesting that the jury may devalue such testimony). Xtra Mart was free to argue to the jury that the statement carried little probative value as a result of its self-serving nature. The trial court did not exceed the bounds of its discretion when it allowed the testimony.

B. Xtra Mart's Motion for a Judgment as a Matter of Law or a New Trial

[¶ 17] Finally, Xtra Mart argues that the trial court erred when it denied its motion for a judgment as a matter of law or a new trial. We review the denial of a motion for a judgment as a matter of law or a new trial to "determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict." *Bates v. Anderson*, 614 A.2d 551, 552 (Me.1992), *quoted in Townsend v. Chute Chem. Co.*, 1997 ME 46, ¶ 8, 691 A.2d 199, 202. A judgment as a matter of law is improper if "*any* reasonable view of the evidence could sustain a verdict for the opposing party." *Currier v. Toys 'R' Us*,

*Inc.*, 680 A.2d 453, 455 (Me.1996); *see also Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 6, 724 A.2d 1248, 1250.

[¶ 18] Xtra Mart argues first that the court was required to grant judgment in its favor because Kaechele failed to establish that Xtra Mart had reason to anticipate the specific assault. The jury heard evidence that: (1) Roddy's tirade lasted for approximately fifteen minutes; (2) people hearing the tirade were concerned about his dangerous behavior; (3) at least one person suggested that the police be called, and no immediate call was made; and (4) Roddy's violence escalated over time. This evidence and the reasonable inferences drawn therefrom support the jury's conclusions that Xtra Mart, through its agents, should reasonably have anticipated the assault.

[¶ 19] Xtra Mart next argues that it was entitled to judgment because Kaechele failed to show that his negligence was less than Xtra Mart's negligence. Along with the duty of a business proprietor to exercise reasonable care in the face of foreseeable dangers to his patrons, *see Brewer*, 295 A.2d at 651, those patrons have a duty to exercise reasonable care to avoid those injuries, *see Isaacson v. Husson College*, 297 A.2d 98 (Me.1972). Xtra Mart argues that because Kaechele and the clerks witnessed the same events, Kaechele must have been as negligent, or more negligent, when he exited the store and confronted Roddy. Although he also witnessed Roddy's outburst, he was neither trained to deal with such situations nor regularly exposed to them. A jury could reasonably conclude that although both he and Xtra Mart were negligent, Xtra Mart was more so. *See* 14 M.R.S.A. § 156 (1980).

dence, we concluded that, although the question to the witness was "posed in the terminology of a legal standard, [it] was not subject to misunderstanding by the witness or the jury." *Id.*

[¶ 20] The trial court did not err when it denied Xtra Mart's motion for a judgment as a matter of law or a new trial.

The entry is:

Judgment affirmed.