MAXWELL OPERATING Co. *v.* C. W. HARPER.

(*Nashville.* December Term, 1917.)

**INNKEEPERS. Checking rooms. Liability for loss.**

A hotel which operates a checkroom is as liable for loss of an overcoat as a carrier is for goods, and a stipulation on a check that articles are left at owner's risk is unreasonable and void, and it is immaterial that there was a safer place in the basement storeroom or in the clerk's safe.

Cases cited and approved: Manning v. Wills, 28 Tenn., 746; Smith v. Railway, 64 N. C., 235; Louisville & N. R. Co. v. Gilbert, 88 Tenn., 430; Grout v. Yazoo, etc., R. Co., 131 Tenn., 667.

Cases cited and distinguished: Lane v. Cotton, 12 Mod., 18; Richmond v. Smith, 8 Barn. & Cress., 9; Cole v. Goodwin, 19 Wend. (N. Y.), 251; Fuller v. Coats, 18 Ohio So., 343.

---

FROM DAVIDSON

---

Appeal from the Circuit Court of Davidson County. —M. H. MEEKS, Judge.

P. M. ESTES and M. P. ESTES for appellant.

J. D. B. DE BOW and J. D. C. ATKINS, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The petitioner operates the Maxwell House, one of the leading hotels of Nashville, and as a part of its

equipment has a checkroom near the lobby, in which rooms the overcoats and small baggage of its guests are kept. Harper, at the time a guest of the house, deposited his overcoat in this room for safe-keeping, and received from the attendant a check, in the form of those there customarily in use, as follows:

"Accommodation Check.

"Left at owner's risk. The management will not be responsible for loss or damage.

"No. 4554.

[Signed] MAXWELL OPERATING Co."

Harper had been a patron of the hotel for two or three years, and on numerous occasions; and on previous visits he had been directed by the clerk and employees of the house to the checkroom as the place in which to deposit such articles. His overcoat in question here was in some way misdelivered or stolen, and he brought this suit to recover its value. Both of the lower courts have given judgment in his favor.

The defenses of the hotel company are that it maintained a baggageroom in the basement where storage was at its risk; also a place behind the clerk's desk where articles might be left, the company assuming responsibility; and, further, that the check received by Harper operated as a contractual limitation upon its common-law liability.

It is conceded, as it must be, that from an early day the rule in this State has been that an innkeeper is excused from liability for the loss of a guest's baggage or goods only when the loss or injury results

138 Tenn.—41

from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. *Manning* v. *Wells,* 9 Humph. (28 Tenn.), 746, 51 Am. Dec., 688, and cases in accord.

We hold on the facts of this case that the attempt to work an abrogation or release of this common-law liability by the handing out of the check was unreasonable.

The storage room in the basement was for heavy baggage, and it does not appear that the equipment behind the desk was other than a safe for the keeping of valuables. By custom and previous dealings with Harper himself, he was by the hotel company directed to the checkroom as a fit and the proper repository for his overcoat.

Obviously, the overcoat was not a thing to be kept as a valuable in a hotel safe. 22 Cyc., 1083, and cases cited.

A hotel which operates a checkroom in effect invites such use by its guests as Harper made of it; and the hotel company could not validly negative its common-law duty or liability by any such regulation or stipulation. The stipulation in the check was void for unreasonableness, unsupported as it was by a consideration.

The exact legal question involved is, perhaps, one of first impression; but the decisions from early times have fairly indicated its true solution by way of an analogy that has been resorted to not infrequently by the judges in argumentation. In cases

which have concerned attempts of carriers, by notice or stipulation, to limit or abrogate their obligations in respect of goods intrusted, the closely parallel relation of a public innkeeper have been referred to, and the obligations imposed by the earlier decisions upon innkeepers have been laid upon common carriers It is interesting to notice that, in the development of jurisprudence, the law governing innkeepers was first declared; and that later, when the courts had to deal with the more modern relation of a common carrier to his patron, the judges made application of many of the rules already in force in respect of the duties and obligations of the ancient innkeeper.

In this case we have the converse proposition, where resort is to be had to analogous decisions on the carrier's obligation.

Touching the analogy: In *Lane* v. *Cotton,* 12 Mod, 18, Chief Justice HOLT, in giving the reason for the obligation of *quasi* insurer being imposed alike upon carriers and innkeepers, said:

"For what is the reason that a carrier or innkeeper is bound to keep such goods as he receives at his peril? It is grounded upon great equity and justice," etc.

In *Richmond* v. *Smith,* 8 Barn. & Chess., 9, BAYLEY, J., said, "It appears to me that an innkeeper's liability very closely resembles that of a carrier," and Lord KENYON in *Kirkman* v. *Shawcross,* 6 T. R., 14, made a like observation.

An instructive and apposite case is that of *Cole* v. *Goodwin*, 19 Wend. (N. Y.), 251, 32 Am. Dec., 470, where there was brought in question the validity of a regulatory stipulation posted up by a common carrier (and known to the passenger before he took passage) to this effect: "All baggage at the risk of the owner." Mr. Justice COWEN, after making ample use of the analogy referred to, said of the carrier's effort:

"There are no principles in the law better settled than that whatever has an obvious tendency to encourage guilty negligence, fraud, or crime, is contrary to public policy. Such, in the very nature of things, is the consequence of allowing the common carrier to throw off or in any way restrict his legal liability. . . . My conclusion is that he shall not be allowed in any form to higgle with his customer and extort one exception and another, not even by express promise or special acceptance any more. than by notice. He shall not be privileged to make himself a common carrier for his own benefit, and a mandatary, or less, to his employer. He is a public servant with certain duties defined by law, and he is bound to perform those duties. As ASHURST, J., said of the duties of innkeepers in *Kirkman* v. *Shaw,* they are indelible. . . . Admitting that the plaintiff acceded in the clearest manner to the proposition in the notice that his baggage should be carried on the terms mentioned, I think the contract thus made was void on

his part as contrary to the plainest principles of public policy.''

See, also, *Smith* v. *Railroad,* 64 N. C., 235.

Carrying forward the parallel: The validity of a stipulation undertaking to limit or release a carrier's liability is to be determined by its reasonableness, and its conformity to the policy of the law in relation to the obligations of the carrier to the public. If it be unreasonable or oppressive, it is deemed void. *Louisville & N. R. Co.* v. *Gilbert,* 88 Tenn., 430, 12 S. W., 1018, 7 L. R. A., 162, and cases cited. The same principle applies in cases dealing with baggage deposited with a carrier, where the analogy becomes even stronger. *Grout* v. *Yazoo, etc., R. Co.,* 131 Tenn., 667, 176 S. W., 1027, L. R. A., 1915E, 281. An unreasonable notice, regulation, or stipulation that baggage is held at the owner's risk will not release the carrier from liability. 10 C. J., 1207, and cases cited.

What was said in *Cole* v. *Goodwin,* supra, should not at this day be construed to deny to the bailee, of either sort, the power to make reasonable regulations governing the exercise of the rights of a guest or passenger. 14 R. C. L., 527. Cases cited and relied upon by petitioner go no further than to declare the existence of such power.

Thus, in *Fuller* v. *Coats,* 18 Ohio St., 343, so cited, the rules requiring reasonableness is recognized. In speaking of an innkeeper it was there said:

"It may, in instances, become absolutely necessary for him to provide special means, and to make necessary regulations and requirements to be observed by the guest, to secure the safety of his property. When such means and requirements are reasonable and proper for that purpose, and they are brought to the knowledge of the guest, with the information that, if not observed by him, the innkeeper will not be responsible," etc.

In the pending case no place was undertaken to be pointed out by the hotel company as safer than the checkroom; the guest was not denied, or even cautioned as to its use, but invited to store his overcoat there. The manifest purpose of the stipulation was to evade the responsibility imposed by the policy of the law on the hotel company.

A correct result was reached when the court of civil appeals adjudged liability. Writ of *certiorari* denied.