# MRS. GERTIE DISPEKER, Appellant, v. The NEW SOUTHERN HOTEL COMPANY, Appellee.—373 S. W. (2d) 897.

Western Section, at Jackson. May 29, 1963.

Certiorari Denied by Supreme Court December 5, 1963.

Moss & Benton and Schneider, Schneider, & Harris, Jackson, for appellant.

William E. Leech and Franklin Murchison, Jackson, for appellee.

BEJACH, J. In this cause, appellant, Mrs. Gertie S. Dispeker, who was complainant in the lower court, appeals from a decree of the Chancery Court of Madison County dismissing her bill against the appellee, the New

Southern Hotel Company, the defendant in the lower court. The parties will be referred to in this opinion as complainant and defendant.

Complainant filed her bill in this cause February 1, 1950, seeking a recovery of $2,050 from defendant for damages to her Buick automobile, the circumstances incident to which are set out in the final decree which will be hereinafter quoted. Numerous preliminary proceedings were had before Hon. DeWitt Henderson, Chancellor, who is now retired; and the case was finally tried in 1962 before the Hon. Brooks McLemore, who succeeded the Hon. DeWitt Henderson as Chancellor. These preliminary proceedings included a rule on Moss and Benton, who filed the original bill to show their authority for representing the complainant, a plea in abatement and a demurrer. These preliminary matters were decided adversely to the defendant, it appearing that the St. Paul Fire & Marine Insurance Co. of St. Paul, Minnesota had paid to Mrs. Gertie S. Dispeker the sum of $2,150, on account of the damage to her automobile, and had taken from her an assignment of her right of action, with authority to bring suit by way of subrogation, in her name or otherwise.

On July 16, 1962, a stipulation signed by solicitors for complainant and defendant was filed in this cause, which stipulation, omitting the caption and signatures thereto, is as follows:

"It is hereby stipulated and agreed by and between the parties hereto and their attorneys that the automobile which is the subject of the original petition filed herein was damaged under the following circumstances:

"On or about March 31, 1949 said automobile was surrendered by complainant and parked by Fred Govan in a parking lot belonging to the defendant and on the defendant's premises at which time it was wrongfully appropriated by Fred Govan and that it was wrecked and damaged while being operated by the said Fred Govan. Fred Govan at said time was in the general employ of the defendant. However, at the time the said automobile was wrongfully appropriated and damaged, he was not on duty as an employee of defendant and was not acting within the scope of his employment with the said defendant. In this connection Fred Govan terminated his duty with the New Southern Hotel for the day at approximately 7 P.M. on the aforesaid date and returned to the hotel and wrongfully appropriated said automobile on his own volition and for reasons personal to him several hours thereafter."

Thereafter, the cause was tried before the Hon. Brooks McLemore, Chancellor, and on September 24, 1962, a final decree in the cause was entered, which decree, omitting the caption and Chancellor's signature, is as follows:

"In this cause defendant having moved the Court to withdraw its request for a jury, which motion being unexcepted to, the Court does grant.

"This cause was initiated before the Honorable Dewitt Henderson, now retired, and the parties, through counsel, having stated and agreed in open Court that it was their desire and request that all questions presented in this cause be heard and ruled on de novo by the present Chancellor, Honorable

Brooks McLemore, including all motions previously ruled on by Chancellor Henderson.

"This cause came on finally to be heard on the 16th day of July, 1962 before the Honorable Brooks McLemore upon the original bill of the complainant, answer of the defendant, stipulations approved by counsel, sworn testimony of witnesses taken upon deposition, oral testimony in open Court, the argument of counsel and the entire record in this cause.

"From all of which it appears and the Court finds that on March 31, 1949 at approximately 5:10 P.M. complainant and her husband while enroute from New Orleans, Louisiana to their home in Cincinnati, Ohio drove their 1946 Four Door Roadmaster Buick Sedan automobile to the front entrance of the defendant's hotel to become an overnight guest of the defendant. Fred Govan, a bell boy, or porter employed by the defendant, greeted complainant and her husband and assisted them in removing their baggage to their assigned room. At the request of the complainant, Govan then drove the complainant's automobile from the front entrance of defendant's hotel to a parking lot located in the rear of and adjoining the hotel building, which parking lot is owned by defendant. The keys to said automobile were retained by complainant; the ignition on this particular vehicle could be operated without the use of the ignition key, and the complainant desired to retain the key to safeguard certain property she had locked in the trunk of her automobile. Complainant explained to Govan that the automobile could be operated without the key.

"Later in the evening at approximately 7 P.M. complainant and her husband while on a casual stroll observed the said automobile parked in the said hotel parking lot. This hotel parking lot was outdoors and unattended and it was not the custom and practice of the defendant hotel to move the guests' cars after they were parked on its lot. Persons having automobiles parked in the lot had free ingress and egress and the guests could park their cars thereon and remove them at will. There was no charge for parking in said lot. The defendant hotel and an agreement with a local parking garage located two or three blocks away whereby defendant's guests could store their car for a fee in said garage, but there is no evidence that complainant did or did not know of this arrangement.

"After the defendant's employee, Govan, went off duty he returned sometime that night prior to midnight to the parking lot and wrongfully appropriated complainant's vehicle and wrecked it, thereby causing said automobile to be wrecked and damaged in the sum of $1,350.00. At the time Govan removed the automobile of complainant from defendant's parking lot, he was not acting within the scope of his employment with the defendant and appropriated the automobile for reasons personal to him and at the time was not on duty.

"The Court is of the opinion that under the facts of this case the common law rule making an innkeeper practically an insurer of the property of its guests is not applicable since the automobile was outside the inn in an open, unattended parking lot.

"The Court is further of the opinion that the defendant was a bailee for hire of said automobile with a duty to exercise reasonable and ordinary care for the protection of complainant's automobile and there is no evidence to show that the removal and appropriation of complainant's automobile was occasioned by the negligence of the defendant bailee.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that complainant's bill be and the same is hereby dismissed with costs to complainant.

"To all of which the complainant excepts and prays an appeal to the Court of Appeals in Jackson; which appeal is granted upon complainant giving a sufficient appeal bond; and thirty days are allowed complainant, from the entry of this decree in which to file said bond.

"This September 24, 1962."

No bill of exceptions was filed, but complainant filed an appeal bond as required by the final decree, and perfected her appeal to this court on the technical record, which includes the stipulation and the decree above quoted.

Before considering the appeal on its merits, it is necessary for us to dispose of two preliminary motions, one made by counsel for the defendant, and the other made by counsel for complainant. Defendant's motion is "to dismiss the appeal of Gertie S. Dispeker and to affirm the judgment of the Chancery Court." This motion contends that the appeal should be dismissed because no bill of exceptions was filed, and a consideration of the

facts of the case is necessary. Complainant's motion is "to strike and dismiss appellee's motion." Both of these motions must be denied. Defendant's motion is not well taken, because this court may properly hear assignments of error based on the technical record, which includes, in this case, a finding of facts by the Chancellor as part of the final decree. Crowder v. Stafford, 1 Tenn. App. 529; Fletcher v. Russell, 27 Tenn. App. 44, 58, 177 S. W. (2d) 854; Harlib v. Harlib, 44 Tenn. App. 80, 312 S. W. (2d) 478. Complainant's motion will be denied, because, in our opinion, it is not the proper method for resisting defendant's motion. Defendant's motion, even though not well taken, was properly filed, and therefore should not be stricken. Consideration of said motions does, however, narrow the issues to be considered in disposing of complainant's appeal. The Chancellor's ruling "that the defendant was a bailee for hire, with a duty to exercise reasonable and ordinary care for the protection of complainant's automobile, and there is no evidence to show that the removal and appropriation of complainant's automobile was occasioned by the negligence of the defendant bailee", amounts, in our opinion, to a finding of fact that defendant was free from negligence. No bill of exceptions having been filed, the question of defendant's liability as bailee is eliminated on appeal, because, even though we might otherwise have disagreed with his ruling that there was no negligence on the part of defendant, that question is concluded by reason of the absence of a bill of exceptions. Complainant's appeal must, therefore, stand or fall exclusively on the question of defendant's common law liability as an innkeeper, which question we will now consider.

Complainant, as appellant, has filed three assignments of error in this court. One of these questions the Chancellor's ruling with reference to the defendant's liability as a bailee. As hereinabove stated, this cannot be reviewed, in the absence of a bill of exceptions. The other two, however, present for our consideration the question of defendant's common law liability as an innkeeper.

■ The common law rule governing liability of innkeepers to guests for loss or damage to property is aptly stated in the opinion of DeWitt, J., in the case of Andrew Jackson Hotel, Inc. v. Platt, 19 Tenn. App. 360, 89 S. W. (2d) 179, as follows:

"The rule of the common law, in force in this state, is that an innkeeper is practically an insurer as to the goods of a guest, and is excused from liability only when the injury results from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. Dickerson v. Rogers, 4 Humph. 179, 40 Am. Dec. 642; Manning v. Wells, 9 Humph. 746, 51 Am. Dec. 688; Rains v. Maxwell House Co., 112 Tenn. 219, 79 S. W. 114, 64 L. R. A. 470, 2 Ann. Cas. 488; Maxwell Operating Co. v. Harper, 138 Tenn. 640, 200 S. W. 515, L. R. A. 1918C, 672. The rule is of ancient origin, having been laid down by Lord Coke in Calye's Case, 8 Coke, 32a, 77 Reprint, 520. It is more strict than the rule generally applied to bailees. The criterion of the liability is the right of the innkeeper to charge the guest for his entertainment. Miller v. Peeples, 60 Miss. 819, 45 Am. Rep. 423. This rule extends to all personal property brought by the guest to the inn and placed under the care of the innkeeper; subject, however, as to certain property, to the provisions of Code, secs.

6680, 6681 (secs. 62-703—62-705 T. C. A.), which are not applicable to this case." Andrew Jackson Hotel, Inc. v. Platt, 19 Tenn. App. 363, 89 S. W. (2d) 181.

The case of Dickerson v. Rogers, 23 Tenn. 179 involved a suit by a guest against an innkeeper for death of the guest's horse which had been fatally injured while stabled in the innkeeper's stable. A recovery in the lower court was affirmed by the Supreme Court. From the opinion of the Supreme Court in that case, written by Green, J., we quote as follows:

"The court charged the jury, in substance, that an innkeeper is bound to take all possible care of the goods of his guests; and that if, through any default of him or his servants, any injury or loss should occur, he will be liable in damages for the value of the property lost. But, if the injury occur through accident, and from no default or neglect of the innkeeper or his servant, he will be exonerated from liability.

\*　\*　\*　\*　\*　\*

"It is not seriously insisted that the charge of the court is erroneous, nor, indeed, could it have been done successfully. It is laid down by Chancellor Kent (2 Com. 593), upon the authority of the English cases, that an innkeeper is bound to keep safe the goods of his guest deposited within the inn, except where the loss is occasioned by inevitable casualty, or by superior force, as robbery. And Mr. Justice Story says (Law of Bailments, 306, sec. 470) that an innkeeper is bound to take, not ordinary care, but uncommon care of the goods and baggage of his guests. If, therefore, the goods or baggage of his guest are damaged in his inn, or are stolen from it by

his servants or domestics, or by another guest, he is bound to make restitution.

"Rigorous as this rule may seem, and hard as its operation may be in a few instances, it is founded on the great principle of public utility, to which all private considerations ought to yield. 'For', as Sir William Jones justly observes (Bailments, 95), 'travelers, who are most numerous in a rich and commercial country, are obliged to rely almost implicitly on the good faith of innkeepers, whose education and morals are none of the best, and who might have frequent opportunities of associating with ruffians and pilferers, while the injured guest would seldom or never obtain legal proof of such combinations, or even of their negligence, if no actual fraud had been committed by them.'

"Upon these principles it is clear that the circuit court was right in holding that the innkeeper was bound to provide safe stables for the horses of his guests, and that any injury sustained by the horse, the result of negligence in securing him properly, or of an imperfect and badly constructed stable, must be compensated in damages by the innkeeper." Dickerson v. Rogers, 23 Tenn. 180-181.

In Andrew Jackson Hotel, Inc. v. Platt, 19 Tenn. App. 360, 89 S. W. (2d) 179, the hotel's guest delivered his automobile to the hotel's doorman, who either took or sent the car to a garage from which the hotel received a commission on all automobiles sent there by it, and for which the hotel was held to be responsible just as if it had itself operated the garage. The hotel was relieved from liability, however, because, after the automobile was

in the garage, the owner had by telephone conversation with the garage keeper arranged to have some repairs done on the car, and the damage done to the car occurred while it was out of the garage for the purpose of being repaired. In that aspect of the situation, it was held that the garage keeper and his servant, who was driving the car at the time it was damaged, were agents of the owner of the automobile, and not agents of the hotel. It seems clear to us, from a careful reading of Judge DeWitt's opinion, that the hotel company would have been held liable if the damage to the automobile had occurred while it was in the garage, or if it had been removed from the garage without authority of the owner. In relieving the hotel company of the liability, the Court of Appeals, Middle Section, held that the automobile of the hotel's guest, at the time of the injury to same, ''was not infra hospitium—neither in the custody nor under the control of the hotel company.''

Counsel for defendant in the instant case contends that the automobile here involved was not infra hospitium, because it was in an open parking lot, and not under the roof of defendant's hotel. We cannot agree with this contention. In our opinion, the parking lot here involved, which was owned and maintained by the defendant for the use and benefit of its guests, was certainly, and more completely, a part of defendant's establishment than was the garage involved in the Andrew Jackson Hotel case. In the instant case, also, the automobile of complainant was removed from defendant's parking lot by a servant or employee of defendant, and without the knowledge or consent of complainant. True, the agent or servant of defendant was not, at that time, on duty; but while he was on duty he had, as an employee of

defendant, obtained the knowledge and information which permitted him to operate the automobile without the ignition key. Without that knowledge and information, is is certainly improbable that he would have returned to the parking lot to remove the automobile therefrom. The situation was, in our opinion, substantially the same as if the ignition key had been turned over to Fred Govan at the time of delivery of the automobile to him and he had kept the key in his possession for the purpose of returning to the parking lot and taking the car, as he did in fact do, without the key.

The case of Sewell v. Mountain View Hotel, Inc., 45 Tenn. App. 604, 325 S. W. (2d) 626, 627, cited and relied on by counsel for defendant, is more favorable to the contention of defendant than any other case which has been called to our attention. In our opinion, however, it falls short of destroying the common law rule of liability. In that case, the complainant, Sewell, a guest of the Mountain View Hotel at Gatlinburg, Tennessee, parked his automobile on one of three parking lots maintained by the hotel for the use of its guests. The complainant, Sewell, selected the place for parking his car, parked it himself, and retained the key. While Sewell was still a guest of the hotel, after a three days stay there, at about 1:00 o'clock A.M., his automobile was severely damaged when a car operated by a drunken driver, in no way connected with the hotel, crashed into the car parked on the lot while being hotly pursued by police officers at a speed of 50 or 60 miles per hour, crashing across the public sidewalk between the parking lot and the street, and into complainant's car. It was conceded that the hotel was guilty of no negligence, and liability was asserted exclusively on the theory that an innkeeper is held practi-

cally as an insuror of the property of a guest. On those facts, this court, Eastern Section, held that the hotel was not liable, although it conceded that the innkeeper's liability is as stated above. The opinion quotes with approval that portion of Judge DeWitt's opinion in Andrew Jackson Hotel, Inc. v. Platt which is quoted above in this opinion, but it denies liability on the ground that the complainant had not placed his automobile in the hands of the hotel or any of its employees. From the opinion in that case, written by Presiding Judge McAmis, we quote, as follows:

"The question, as yet undecided in Tennessee, is whether a guest's car left on a parking lot is infra hospitium within the sense of the general rule. We hold that, under the peculiar circumstances of this case, the innkeeper as a matter of law is not liable. The relationship of innkeeper and guest being conceded, the case turns on whether the car in this case was 'placed under the care of the innkeeper', either expressly or by reasonable implication. Andrew Jackson Hotel v. Platt, supra.

\* \* \* \* \* \*

"In this case, under the most favorable view of the evidence, plaintiff saw a sign indicating that the lot was for the use of guests. Without other invitation he parked there at the end of each day. There is no proof that anyone connected with the Hotel ever knew he had parked there or ever had the slightest control over the car, where it would be parked or whether or not it would be kept locked. Except for the bare fact that the Hotel owned the lot, complete possession and control necessarily remained with plaintiff, the guest. These circumstances in our opin-

ion serve to distinguish the present case from cases where the innkeeper has been held liable for the guest's automobile. In most, if not all such cases, either the Hotel directed the guest where to park on its premises or else accepted manual possession of the car for the purpose of parking or storage.''

Under the facts, as found by the Chancellor in the instant case, we hold that complainant's automobile was infra hospitium, having been delivered to its employee, Fred Govan, for parking on defendant's parking lot, and that defendant's responsibility and liability continued up to and including the time when Fred Govan, even though off duty, returned to the parking lot, took the car out, and wrecked it.

That the common law rule as to an innkeeper's liability in such cases remains unabated in England, the mother of the common law, is demonstrated by the English case of Aria v. Bridge House Hotel Ltd., 137 L. P. N. S. 299, 16 B. R. C. 536, decided in 1927. This case is referred to in Judge McAmis's opinion in the case of Sewell v. Mountain View Hotel.

The case of Kallish v. Meyer Hotel Co., 182 Tenn. 29, 184 S. W. (2d) 45, 156 A. L. R. 231, decided by the Supreme Court in 1944, falls short of being a direct authority deciding the question involved in the instant case, although it might have had important bearing on the bailment theory of liability in the instant case, if a bill of exceptions had been filed to preserve the testimony heard by the Chancellor. In the Kallish case, liability of the hotel was grounded, by both the Chancery Court and the Court of Appeals, on the theory that the garage in which the hotel had placed the complainant's car and for

whose acts it remained liable, had been negligent. Although the question of the innkeeper's liability as insuror was pretermitted, the Supreme Court's opinion indicates that, independent of the question of negligence, that liability would have been enforced. From the Supreme Court's opinion, written by Mr. Justice Gailor, we quote as follows:

"Both these courts found, not only that the hotel company was a bailee for hire, but that the doorman of the hotel, in issuing the check to the guests, was, the agent, not of the garage company, but of the hotel. The Court of Appeals further held that so far as the garage keeper and the guests of the hotel were concerned, in view of the contract between the hotel and the garage, that the garage keeper was also an agent of the hotel company, and that further, being negligent in the delivery of the automobile to an unnamed soldier without the presentation of the issued check, that the hotel company was liable for the negligence of its agent. We think all essential aspects of the case are controlled by the opinion of Andrew Jackson Hotel, Inc. v. Platt, 19 Tenn. App. 360, 89 S. W. (2d) 179, where in an opinion by Judge DeWitt, in an identical contract between a hotel and a garage, it was held that the garage was the agent of the hotel company. The Platt case was different from the one before us in that after the car of the guest of the hotel had been stored in the garage, the guest entered into a separate contract with the owner of the garage and during the execution of the latter contract the damage occurred to the car. However, in the course of the opinion the rights, relations and responsibilities of the guest, the hotel and the

garage were clearly defined. They were identical with the case before us here, and in following the Platt opinion and rendering judgment against the hotel company, we think that the courts below correctly applied the rules of law applicable.

\*    \*    \*    \*    \*    \*

"On the facts of the case before us, since the two lower courts concurred in finding that the garage, as agent of the hotel, was guilty of negligence, it is unnecessary to say whether, under the circumstances, an innkeeper would be an insurer of its guest's automobile when the automobile is entrusted to the hotel, an innkeeper, for safekeeping. Such was the holding of this Court with regards to a guest's horse in Dickerson v. Rogers, 23 Tenn. 179, 40 Am. Dec. 642." Kallish v. Meyer Hotel Co., 182 Tenn. 31-32, 184 S. W. (2d) 46, 156 A. L. R. 231.

The Kallish case is styled "Kallish for Use and Benefit of United States Fire Insurance Co. v. Meyer Hotel Company", and it appears in the opinion that the insurance company, which had paid for Kallish's car, was the beneficiary of the recovery awarded. The same is true in the instant case, except that it does not appear in the caption of the case, that the complainant, Mrs. Dispeker, brought this suit for the use and benefit of the insurance company. The technical record discloses, however, the authority of the insurance company to sue in her name, and the technical record also includes the finding of facts incorporated in the final decree. We conclude, therefore, with only the technical record before us, that the learned Chancellor committed error in not applying to the facts found by him, the common law rule of liability enforceable against innkeepers.

It results that the decree of the Chancellor will be reversed and that a decree may be entered in this court for $1,350, the amount of damage found by the Chancellor to have been done to complainant's automobile. The costs of the cause, including both the costs of the lower court and the costs of the appeal, will be adjudged against the defendant, the New Southern Hotel Company.

Avery, (PJ.,W.S.), and Carney, J., concur.