SHEPHERD FLEETS, INC., d/b/a
Dollar Rent A Car, Plaintiff,

v.

OPRYLAND USA, INC., d/b/a
Opryland Hotel, Defendant.

Martha L. Hall CROCKER,
Plaintiff–Appellant,

v.

OPRYLAND USA, INC.,
Defendant–Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 27, 1988.

Permission to Appeal Denied by
Supreme Court Oct. 24, 1988.

Brenda Measells Dowdle, Nashville, for plaintiff-appellant.

Rose P. Cantrell, Richard K. Smith, Nashville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

This appeal should be captioned, "Martha L. Hall Crocker, plaintiff-appellant, vs. Op-

ryland USA, Inc., defendant-appellee", for the following reasons:

Separate suits were brought in General Sessions Court by Shepherd Fleets, Inc., and Martha L. Hall Crocker against Opryland, USA, Inc., and Roland Ighodara. The General Sessions Court rendered judgments against Ighodara who did not appeal. Upon appeal to Circuit Court by the plaintiffs, Ighodara was included in the caption of both cases. The suits were consolidated for trial; and a non-jury judgment dismissed both suits against Opryland USA, Inc., but did not mention Ighodara. Ighodara is not before this Court. Shepherd Fleets, Inc., did not appeal from the dismissal of its suit against Opryland USA, Inc., hence Shepherd Fleets is not before this Court.

As to the controversy between Martha L. Hall Crocker and Opryland USA, Inc., the facts were stipulated in substance as follows:

On August 16, 1985, plaintiff entered the defendant's hotel as a guest, at which time she delivered to a hotel employee her automobile with keys to be stored in the "Valet Parking Lot" of the hotel to which only hotel employees were admitted. The hotel had complete care, custody and control of the vehicle while it was in the Valet Parking Lot.

On the same date, Roland Ighodara, an employee of the defendant who had completed his day's work, was driving his personal automobile from work to home along a drive or road adjoining the Valet Parking Lot when he lost control of his vehicle, left the road, traversed an earth berm, or embankment 27¾ to 42 inches high and covered with shrubbery, severed a six inch pine tree, became airborne and crashed into five automobiles in the Valet Parking Lot, including that of plaintiff.

There is no evidence of any negligence by defendant or by any of its employees acting within the scope of their employment. The only ground of possible liability of the hotel is the asserted common law rule that an innkeeper is "practically an insurer" of property of a guest left in the custody of the innkeeper.

The issue on appeal is whether the asserted rule is the law of Tennessee, and whether it is applicable to the facts of this case.

No enactment of the Legislature has been found which would make the asserted rule a part of the law of this State. However, Article XI, Section 1 of the present (1870) Constitution of Tennessee provides:

> Existing laws not affected by this Constitution.—All laws and ordinances now in force and use in this State, not inconsistent with this Constitution, shall continue in force and use until they shall expire, be altered or repealed by the Legislature; but ordinances contained in any former Constitution or schedule thereto are hereby abrogated.

By the provisions of the Constitution of 1796 and the cession act of North Carolina contained in Acts 1789, Ch. 3 § 1, condition 8, all laws in force in North Carolina at the time said cession act became effective in the ceded territory which became this State and laws in effect in the ceded territory at the time of the adoption of the 1796 Constitution became effective in Tennessee, except those inconsistent with the Constitution. By Acts 1715, ch. 31 §§ 6, 7 and Acts 1778, ch. 5 § 2 all the common law and English statutes passed before the fourth year of James I, 1607, previously in force and use in the territory and the acts of the general assemblies not destructive of, repugnant to or inconsistent with the freedom and independence of North Carolina and the form of government therein established, and which had not otherwise been provided for in whole or in part, not abrogated, repealed, expired or become obsolete were declared to be in full force and effect in the State of North Carolina. *Glasgow's Lessee v. Smith*, 1 Tenn. (1 Overton) 144 (1799), and many authorities since published.

All public and general statutes of the State, including the English statutes and

statutes of North Carolina then existing and in force in this State were repealed by the Code of 1858. *State v. Miller,* 79 Tenn. (11 Lea) 620 (1883).

■ The decisions of the Courts of Tennessee, announced prior to the enactment of the Code of 1858, construing and applying ancient English statutes, and establishing principles and rules of law and rules of property thereon, were not annulled by said Code. Such decisions had become a part of our own jurisprudence, not as English statutes, but as part of what may well be termed our own common law. *State v. Miller,* supra; *Moss v. State,* 131 Tenn. 94, 173 S.W. 859 (1914).

The Constitution preserved the existing system of laws until changed by the Legislature unless changed or abolished by the Constitution itself. *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229 (1912).

The natural and necessary inquiry is, what rules of law regarding innkeepers' liability were preserved by the present constitution.

The earliest reported Tennessee Decision on the liability of an innkeeper is *Dickerson v. Rogers,* 23 Tenn. (4 Humph) 179 (1843), wherein the horse of a guest was injured when his head was lodged in a defective stall partition of a stable of the inn. The Supreme Court affirmed a judgment for the guest and said:

> The court charged the jury, in substance, that an innkeeper is bound to take all possible care of the goods of his guests; and that if, through any default of him or his servants, any injury or loss should occur, he will be liable in damages for the value of the property lost. But, if the injury occur through accident, and from no default or neglect of the innkeeper of his servant, he will be exonerated from liability.
>
> An innkeeper is bound to provide safe stabling for the horses of his guests, and so constructed and arranged that the horses placed within it will be secure and safe from injury; and, if owing to the defective and imperfect construction of the stable or its stalls, an injury is done to the horse of the guest, the innkeeper will be responsible for the injury. But, if an injury result to a horse in consequence of his viscous (sic) habits, and not through any negligence or want of care of the innkeeper and his servants, he would not be liable therefor.

. . . .

It is not seriously insisted that the charge of the court is erroneous, nor, indeed, could it have been done successfully. It is laid down by Chancellor Kent (2 Com. 593), upon the authority of the English cases, that an innkeeper is bound to keep safe the goods of his guest deposited within the inn, except where the loss is occasioned by inevitable casualty, or by superior force, as robbery. And Mr. Justice Story says (Law of Bailments, 306, sec. 470) that an innkeeper is bound to take, not ordinary care only, but uncommon care of the goods and baggage of his guests. If, therefore, the goods or baggage of his guest are damaged in his inn, or are stolen from it by his servants or domestics, or by another guest, he is bound to make restitution.

Rigorous as this rule may seem, and hard as its operation may be in a few instances, it is founded on the great principle of public utility, to which all private considerations ought to yield. "For," as Sir William Jones justly observes (Bailments, 95), "travelers, who are most numerous in a rich and commercial country, are obliged to rely almost implicitly on the good faith of the innkeepers, whose education and morals are none of the best, and who might have frequent opportunities of associating with ruffians and pilferers, while the injured guest would seldom or never obtain legal proof of such combinations, or even of their negligence, if no actual fraud had been committed by them."

Upon these principles it is clear that the circuit court was right in holding that the innkeeper was bound to provide safe

stables for the horses of his guests, and that any injury sustained by the horse, the result of negligence in securing him properly, or of an imperfect and badly constructed stable, must be compensated in damages by the innkeeper. 23 Tenn. at 180–181

The quoted opinion mentions a rule of strict liability, subject to exceptions for inevitable casualty or superior force; but the decision is based upon approval of the jury charge of liability for "any default of him or his servants" and exoneration from liability for injuries through accident without fault of the innkeepers or his servants.

In *Manning v. Wells*, 28 Tenn. (9 Humph) 746 (1849) suit was filed against a boarding house for loss of property stolen from the room of plaintiff. The Supreme Court dismissed and said:

> The court charged the jury that the defendant was liable for the coat, if lost or stolen from his house, unless it happened by the act of God or public enemies; but if the plaintiff had exclusive use and possession of the room, then the defendant would not be liable.

> The jury found for the plaintiff the value of the coat, and the defendant appealed to this court.

> The question now is, Did his honor err in the instructions to the jury? And we think he did. The doctrine stated by his honor is certainly the true one as applicable to the goods of a guest in an inn. But a guest is a traveller or wayfarer, who comes to an inn and is accepted. Story on Bail, sec. 477. A neighbor or friend who comes to an inn on the invitation of the innkeeper is not deemed a guest. Bac. Abr., Inn and innkeeper, 5; Com. dig., action on case for negligence, B. 2. Nor is a person a guest, in the sense of the law, who comes upon a special contract to board and sojourn at an inn; he is deemed a boarder. And if he is robbed the host is not answerable for it. 5 Bac. Abr., Inn and Innkeeper, 5.

> These principles are settled by the authorities, and founded in sound reason.

> A passenger or wayfaring man may be an entire stranger. He must put up and lodge at the inn to which his day's journey may bring him. It is, therefore, important that he should be protected by the most stringent rules of law enforcing the liability of the innkeeper. In such case, therefore, the law makes the innkeeper an insurer of the goods of his guest, except as to losses occasioned by the act of God or public enemies. But as a boarder does not need such protection, the law does not afford it. It is sufficient to give him a remedy when he shall prove the innkeeper has been guilty of culpable negligence.

> In this warrant the defendant is required to answer on promises. But on the evidence the plaintiff seeks to make him liable for a tort. Although we do not hold justices of the peace to that technical strictness which is required in proceedings in courts of record, yet we have always held that they must give some general statement of the cause of action. Here the cause of action stated is repugnant to that proved. The evidence was, therefore, inapplicable to the action.

> Let the judgment be reversed, and the cause be remanded. 28 Tenn. at 747–748.

Although the Supreme Court mentioned the strict English rule, it was not involved in the decision because it was held inapplicable to the facts.

In *Weeks v. McNulty*, 101 Tenn. 495, 48 S.W. 809, 43 L.R.A. 185, 70 Am.St.Rep. 693 (1898), the suit was for wrongful death of a guest by fire, and the alleged rule of strict liability for loss of property was not involved, but the Supreme Court did observe:

> The general law governing liability of an innkeeper is that he is not an insurer of the person of his guests, but his obligation is merely to exercise reasonable care that his guests may not be injured by anything happening through the innkeeper's negligence. 11 Am. & Eng. Enc.L. p. 32. 101 Tenn. at 499, 48 S.W. 809.

In *Rains v. Maxwell House Co.*, 112 Tenn. 219, 79 S.W. 114, 64 L.R.A. 470, 2 Ann.Cas. 488 (1903), a watch and fob disappeared from the room of a guest who sued for their value. The hotel defended on the basis of notice posted in the room requiring valuables to be placed in the hotel safe as provided by § 3593 of Shannon's Code, now T.C.A. § 62–7–103. The Supreme Court said:

> The common law, as well understood, is that an innkeeper is an absolute insurer of the property of his transient guest, and under that rule the hotel company would be liable in this case.
>
> . . . .
>
> We think that the watch and fob must be considered as embraced in the terms "jewels and ornaments."
>
> Mr. Webster defines the word "jewel" as an ornament of dress, usually made of a precious metal, having enamel or precious stones as a part of its design; but we are of the opinion that the sense in which it was used by the legislature is the common meaning attributed to it as an ornament, or useful article of value, and embraces a watch used for a timekeeper or chronometer, and in which precious stones may or may not form a part. The fob is evidently an article kept and worn both for use and ornament.
>
> If a guest sees proper to keep his watch and his fob and money upon his person or in his room, he does so at his own risk, just as he keeps it about his own person and in his possession when not in the hotel or inn. If he desires for his own safety or inconvenience to place the responsibility for its safe keeping upon the hotel company during his stay in the hotel as a guest, then he must place it in the safe which the statute requires to be provided by the innkeeper for that purpose. We can put no other construction upon the statute, without nullifying wholly or to some extent its provisions.
>
> It may be inconvenient to deposit small sums of money and pieces of jewelry of little value in the safe or a hotel, and it may be inconvenient to do without their use in the room during the stay of the guest, but this is a condition under the statute, upon which the hotel keeper can alone be made liable for their safety as an insurer.
>
> If the guest desires to avoid these inconveniences, he may retain possession of his money and his jewelry, just as if he were not a guest of the hotel.

112 Tenn. at 223–224, 231–232, 79 S.W. 114. It is seen that the Supreme Court declined to apply the asserted common law rule because of the statutory provision for valuables.

In *Meacham v. Galloway*, 102 Tenn. 415, 52 S.W. 859, 46 L.R.A. 319, 73 A.St.Rep. 886 (1899), certain clothing was stolen from a hotel room rented by plaintiff by the week at a reduced rate. The opinion of the Supreme Court cites the history and nature of the English rule of strict liability, but holds that the plaintiff was not a guest, but a boarder, and thus dismissed his suit for lack of evidence of negligence of the innkeeper.

In *Andrew Jackson Hotel v. Platt*, 19 Tenn.App. 360, 89 S.W.2d 179 (1936), the plaintiff registered at the hotel and arranged with the doorman to have his car sent to a garage which the doorman assured was perfectly responsible. The doorman was told to instruct the garage to examine the car for a rattle and to telephone plaintiff. The doorman gave plaintiff a claim check of the garage. The garage called plaintiff who authorized the repair. Without authority of plaintiff, the garage sent the car to another garage for the repair. On the return trip to the first garage, the car was damaged in a collision. The Trial Judge found for the plaintiff. On appeal, this court reversed a directed verdict against the hotel and dismissed the suit against the hotel stating:

> ■ We have not found any decision involving facts quite analogous to these. The rule of the common law, in force in this state, is that an innkeeper is prac-

tically an insurer as to the goods of a guest, and is excused from liability only when the injury results from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. *Dickerson v. Rogers* [23 Tenn.], 4 Humph., 179, 40 Am.Dec., 642; *Manning v. Wells* [28 Tenn.] 9 Humph., 746, 51 Am.Dec., 688; *Rains v. Maxwell House Co.*, 112 Tenn. 219, 79 S.W., 114, 64 L.R.A., 470 2 Ann.Cas., 488; *Maxwell Operating Co. v. Harper*, 138 Tenn., 640, 200 S.W., 515, L.R.A., 1918C, 672. The rule is of ancient origin, having been laid down by Lord Coke in Calye's Case, 8 Coke, 32a, 77 Reprint, 520. It is more strict than the rule generally applied to bailees. The criterion of the liability is the right of the innkeeper to charge the guest for his entertainment. *Miller v. Peeples*, 60 Miss., 819, 45 Am.Rep., 423. This rule extends to all personal property brought by the guest to the inn and placed under the care of the innkeeper; subject, however, as to certain property, to the provisions of Code, sections 6680, 6681, which are not applicable to this case.

In *Dickerson v. Rogers* [23 Tenn.], 4 Humph. 179, 40 Am.Dec., 642, the keeper of a public inn maintained a stable for the horses of guests. A horse of a guest was fatally injured from a defect in the stable. The innkeeper was held liable for the value of the horse because safe stabling had not been provided; the innkeeper being obligated to take all possible care of the goods of the guest.

. . . .

The question then is, did the hotel company through its agent bring about the injury to the automobile by violating its obligation to the owner? Or was the car injured during the performance of a separate and independent contract made by the owner with the garage keeper, and with which the hotel company was in nowise connected by any contract or obligation? When Dr. Platt agreed that his car be sent to the garage, he had no reason to believe that the hotel company owned or maintained the garage. On the other hand, he had direct notice that it did not. His inquiry as to the responsibility of the garage keeper showed his understanding that it did not. The claim check contained no reference to the hotel, but was a receipt by Ogilvie as owner of the garage. Dr. Platt had no reason to think that it was business of the hotel company to have automobiles repaired.

The doorman of the hotel merely conveyed to the garage keeper the request of Dr. Platt that he examine the car, ascertain the cost of repairs, and then report directly to Dr. Platt. In this the doorman acted solely as the agent of the owner and not of the hotel company. When the garage keeper reported the defect and the cost of repair to Dr. Platt, he thereupon made a contract of agency or employment directly with him, and with which the hotel company had nothing to do. When, under this agreement, the car was taken out of the garage for repairs, the obligation of the hotel company ceased until its return, although Dr. Platt did not know that it might be taken out of the garage. The act of taking it out was consequent alone upon the agreement which Dr. Platt made with the garage keeper. During that time the car was not infra hospitium—neither in the custody nor under the control of the hotel company.

In Calye's Case, supra, it was held that, if a man comes to a common inn, and delivers his horse to the hostler, and requires him to be put to pasture, which is done accordingly, and the horse is stolen, the innkeeper shall not answer for it; but, if the owner doth not require it, but the innholder, of his own head, puts the guest's horse to grass, he shall answer for him if he be stolen—so that the innholder, by law, shall answer for nothing that is out of his inn, but only for those things which are infra hospitium. The innkeeper is responsible for the goods of a guest placed outside the inn on the direction of the innkeeper without the knowledge or consent of the guest; but

not where they are placed or left outside the inn at the request, or by the act, of the guest. 32 C.J., 557, and cases cited. There is no evidence that the hotel company, or any one at the time acting as its agent or servant, failed to exercise the care required of it. 19 Tenn.App. 363–365, 89 S.W.2d 179.

It is seen that this Court referred to, but did not apply the strict English rule. Indeed, this Court held the strict English rule to be inapplicable to the facts.

In *Sewell v. Mountain View Hotel, Inc.,* 45 Tenn.App. 604, 325 S.W.2d 626 (1959), this Court affirmed a judgment dismissing a suit for damage to an automobile from a hotel parking lot without fault of the hotel because the automobile was never entrusted to the care and custody of the hotel. However, this Court said:

> The rule of the common law, in force in this state, is that an innkeeper is practically an insurer as to the goods of a guest, and is excused from liability only when the injury results from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. *Dickerson v. Rogers* [23 Tenn.], 4 Humph. 179, 40 Am.Dec., 642; *Manning v. Wells* [28 Tenn.], 9 Humph. 746, 51 Am.Dec. 688; *Rains v. Maxwell House Co.,* 112 Tenn. 219, 79 S.W. 114, 64 L.R.A. 470, 2 Ann.Cas. 488; *Maxwell Operating Co. v. Harper,* 138 Tenn. 640, 200 S.W. 515, L.R.A. 1918C, 672. The rule is of ancient origin, having been laid down by Lord Coke in Calye's Case. 8 Coke, 32a, 77 Reprint, 520. It is more strict that the rule generally applied to bailees. the criterion of the liability is the right of the innkeeper to charge the guest for his entertainment. *Miller v. Peeples,* 60 Miss. 819, 45 Am.Rep. 423. This rule extends to all personal property brought by the guest to the inn and placed under the care of the innkeeper....

> ....

In the English case of *Aria v. Bridge House Hotel, Ltd.,* 137 L.T.N.S. 299, 16

B.R.C. 536, the guest's car was stolen from a lot adjoining the hotel. In that case, the porter had directed the guest where to park and the court applied the rule of liability in all its rigor to hold the innkeeper liable. 45 Tenn.App. at 606, 608, 325 S.W.2d 626.

In *Kallish v. Meyer Hotel Co.* 182 Tenn. 29, 184 S.W.2d 45, 156 A.L.R. 281 (1944), the Supreme Court approved a judgment in favor of a hotel guest for loss of his vehicle by misdelivery and said:

> On the facts of the case before us, since the two lower courts concurred in finding that the garage, as agent of the hotel, was guilty of negligence, it is unnecessary to say whether, under the circumstances, an innkeeper would be an insurer of its guest's automobile, when the automobile is entrusted to the hotel, an innkeeper, for safekeeping. Such was the holding of this Court with regard to a guest's horse in *Dickerson v. Rogers,* 23 Tenn. 179, 40 Am.Dec. 642. 182 Tenn. at 32, 184 S.W.2d 45.

In *Dispeker v. New Southern Hotel Co.,* 52 Tenn.App. 379, 373 S.W.2d 897 (1963) this Court reversed the dismissal of a suit by a hotel guest who had turned her auto over to a hotel bell boy who had placed it on the hotel parking lot but later returned after going off duty and took the auto from the lot and wrecked it. In entering judgment for the plaintiff, this Court said:

> The common law rule governing liability of innkeepers to guests for loss or damage to property is aptly stated in the opinion of DeWitt, J., in the case of *Andrew Jackson Hotel, Inc. v. Platt,* 19 Tenn.App. 360, 89 S.W.2d 179....

■ Under the facts, as found by the Chancellor in the instant case, we hold that complainant's automobile was infra hospitium, having been delivered to its employee, Fred Govan, for parking on defendant's parking lot, and that defendant's responsibility and liability continued up to and including the time when Fred Govan, even though off duty, returned to the parking lot, took the car out, and wrecked it.

That the common law rule as to an innkeeper's liability in such cases remains unabated in England, the mother of the common law, is demonstrated by the English case of *Aria v. Bridge House Hotel Ltd.*, 187 L.P.N.S. 299, 16 B.R.C. 536, decided in 1927. This case is referred to in Judge McAmis's opinion in the case of *Sewell v. Mountain View Hotel.* 52 Tenn.App. at 387–388, 393, 373 S.W.2d 897.

Upon petition for certiorari, the Supreme Court affirmed the decision of this Court, but on other grounds. In the opinion published as *Dispeker v. New Southern Hotel*, 213 Tenn. 378, 373 S.W.2d 904 (1963) the Supreme Court said:

■ As we view the case, however, it is unnecessary to decide the question raised by this assignment of error....

....

■ It is true that in an action ex contractu, where the bailor relies on an ordinary contract of bailment without predicating his right of recovery upon the bailee's negligence, the bailor makes out a prima facie case of breach of contract when he shows delivery of the article to the bailee and the bailee's failure to return it in good condition on demand or as agreed on; and the bailee may escape liability only by affirmatively showing that his failure to redeliver was without his fault. (citing authorities).

■ Apparently, however, in the case of misdelivery, absolute liability is placed on the bailee regardless of negligence. In the latest edition of American Jurisprudence, it is said:

"It is uniformly held that a delivery of bailed property by the bailee to one not the true owner and not authorized by the bailor to receive it is, of itself, a conversion and breach of the contract of bailment for which the law imposes an absolute liability upon the bailee for loss or damage occasioned thereby, irrespective of the fact that he may have acted in good faith and without negligence, and even though the misdeliv-ery was the result of innocent mistake or was induced by fraud or trick". Am, Jr.2d 1057–58, Bailments, Sec. 167.

....

In the instant case when complainant turned her automobile over to defendant's servant for safekeeping, the bailment for hire contract was impliedly created, defendant bailee promising to redeliver the vehicle in reasonably good condition on the demand of complainant, or to her order, and to no one else. To do that was just as much a part of the contract of bailment as if it had been solemnly written out and signed by both parties. *Potomac Ins. Co. v. Nickson*, supra, 64 Utah 395, 231 P. 445, 42 A.L.R. 128.

It was only through defendant's unfortunate choice of employee that the automobile was damaged. Thus, when the automobile was turned over to Govan, then off-duty, an act quite analogous to misdelivery took place, imposing absolute liability upon the bailee for the loss or damage occasioned thereby.

Therefore, we hold that the defendant hotel is liable for misdelivery and the law will not inquire whether it did so in good faith or through negligence or otherwise. The writ is denied. 213 Tenn.App. at 386–390, 373 S.W.2d 904

In the foregoing Tennessee authorities the strict English rule of innkeepers' responsibility has been often mentioned and discussed, but not a single one of the foregoing authorities uses or applies the rule as the controlling law in the case. Whether the numerous instances of mention without application indicates any dissatisfaction with or disinclination to apply the harsh rule is a matter of conjecture only.

■ Obiter dictum is not binding under the doctrine of stare decisis. *Metropolitan Government of Nashville and Davidson County v. Reynolds*, 512 S.W.2d 6 (Tenn. 1974); *Bomar v. State ex rel Boyd*, 312 S.W.2d 174 (Tenn.1958), cert. den. 358 U.S. 921, 79 S.Ct. 293, 3 L.Ed.2d 240.

■ Court decisions must be read with special reference to the questions involved and necessary to be decided, and language used which is not decisive of the case or decided therein is not binding as precedent. *Rush v. Chattanooga DuPont Emp. Credit Union*, 210 Tenn. 344, 358 S.W.2d 333 (1962).

The only reported Tennessee authority which applies the common law rule is *Maxwell Operating Co. v. Harper*, 138 Tenn. 640, 200 S.W. 515 (1918), wherein the guest sued for loss of an overcoat deposited in a hotel check room for which a received check stating:

Accommodation Check: Left at owner's risk. The management will not be responsible for loss or damage. No. 4554.

The Court of Civil Appeals affirmed a judgment for the guest. On petition for certiorari, the Supreme Court said:

It is conceded, as it must be, that from an early day the rule in this State has been that an innkeeper is excused from liability for the loss of a guest's baggage or goods only when the loss or injury results from the act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself. *Manning v. Wells*, 9 Humph. (28 Tenn.), 746, 51 Am.Dec., 688, and cases in accord.

We hold on the facts of this case that the attempt to work an abrogation or release of this common-law liability by the handing out of the check was unreasonable.

. . . .

A hotel which operates a checkroom in effect invites such use by its guests as Harper made of it; and the hotel company could not validly negative its common-law duty or liability by any such regulation or stipulation. The stipulation in the check was void for unreasonableness, unsupported as it was by a consideration.

. . . .

In this case we have the converse proposition, where resort is to be had to analogous decisions on the carrier's obligation.

Touching the analogy: In *Lane v. Cotton*, 12 Mod. 18 Chief Justice Holt, in giving the reason for the obligation of quasi insurer being imposed alike upon carriers and innkeepers, said:

"For what is the reason that a carrier or innkeeper is bound to keep such goods as he receives at his peril? It is grounded upon great equity and justice," etc.

In *Richmond v. Smith*, 8 Barn, & Chess., 9, Bayley, J., said, "It appears to me that an innkeeper's liability very closely resembles that of a carrier," and Lord Kenyon in *Kirkman v. Shawcross*, 6 T.R., 14, made a like observation.

. . . .

In the pending case no place was undertaken to be pointed out by the hotel company as safer than the checkroom; the guest was not denied, or even cautioned as to its use, but invited to store his overcoat there. The manifest purpose of the stipulation was to evade the responsibility imposed by the policy of the law on the hotel company.

A correct result was reached when the court of civil appeals adjudged liability. Writ of certiorari denied. 138 Tenn. at 641–643, 646, 200 S.W. 515.

It is seen that the common law as applied in *Maxwell House Operating Co. v. Harper* is that:

An innkeeper is excused from liability for loss of a guest's baggage or goods only when the loss or injury results from an act of God or is caused by the public enemy, or by the fault, direct or implied, of the guest himself.

Other authorities in other jurisdictions have recognized other exceptions to the rule, such as irresistible force, inevitable accident, or external force. See 40 Am.Jur. Hotels, etc., § 126, p. 999. However, these appendages to the rule have not been applied by any reported Tennessee decision and are not considered by this Court to be a part of the common law of this State.

Defendant cites two Tennessee authorities in addition to the foregoing, but they are inapplicable because they are parking lot and not hotel guest cases.

Defendant asserts that the strict common law rule does not apply because plaintiff's automobile was not "infra hospitium" because it was not "stored and kept within the four walls of the inn". Such is not the meaning or intent of the expression "infra hospitium". The meaning is "in the care and custody of the innkeeper". Black's Law Dictionary Fourth Edition, p. 919. *Davidson v. Madison Corporation,* 247 N.Y.S. 789, 231 App.Div. 421 (1931).

The discussion of placing the horse of the guest on pasture in *Andrew Jackson Hotel v. Platt,* supra, although dicta, is clear indication of the meaning of the words.

■ This Court is satisfied that the rule as adopted in Tennessee includes any property delivered and accepted into the exclusive custody of the innkeeper and that the term "infra hospitium", includes all property deposited and accepted in exclusive control of the innkeeper, wherever the innkeeper elects to physically store the property, whatever its character, so long as it is not the type of property for which special statutory provision exists.

This Court notes with concern the present incongruous state of the law in this State regarding the liability of innkeepers.

■ The innkeeper is "practically an insurer" (liable without fault) of personal property of the guest "infra hospitium". However, the innkeeper is not in a like position in regard to the person of a guest; and the liability of the innkeeper is eliminated or sharply limited as to valuables and baggage by T.C.A. §§ 62–7–103, 104, 105, 106. This is a subject which merits legislative investigation and action.

The judgment of the Trial Court is reversed. Costs of this appeal are taxed against the defendant, Opryland USA, Inc. The cause is remanded for entry of final judgment in favor of the plaintiff and against Opryland USA, Inc., for the stipulated damages of $11,000.00 plus interest from the date of the filing of this suit and costs, for further proceedings to resolve the unresolved issues in the case and for enforcement of the judgment.

REVERSED AND REMANDED.

LEWIS, J., concurs.

KOCH, J., concurs in separate opinion.

KOCH, Judge, concurring.

The majority's opinion reaches a proper result, albeit by a circuitous route. I have prepared this separate opinion to address the points raised in the briefs and during argument concerning the significance of the Tennessee Supreme Court's decision in *Dispeker v. New Southern Hotel Co.,* 213 Tenn. 378, 373 S.W.2d 904 (1963).

### I.

After tracing Tennessee's common law back to its roots, the majority concludes that the common law standard of liability of innkeepers to their guests is part of the law of this state. This is undoubtedly true, except to the extent that the common law standard has been modified by the Tennessee Supreme Court or by the General Assembly.[1]

Unfortunately, the majority's opinion leaves the impression that the common law is immutable and that once a principle of common law is recognized or followed, it becomes an indelible part of our jurisprudence. This is simply not the case. Tennessee's common law is not static. It continues to grow and change to accommodate the needs of modern society. *Powell v. Hartford Accident & Indem. Co.,* 217

---

1. The General Assembly has limited an innkeeper's liability with regard to "money, jewels, ornaments, or samples" in Tenn.Code Ann. §§ 62–7–103 & 104 (1986) and with regard to "personal baggage" in Tenn.Code Ann. §§ 62–7–105 & 106 (1986).

Tenn. 503, 509–10, 398 S.W.2d 727, 730–31 (1966); *Box v. Lanier,* 112 Tenn. 393, 407, 79 S.W. 1042, 1045 (1904); *Jacob v. State,* 22 Tenn. (3 Hum.) 493, 515 (1842).

Were it not for the Tennessee Supreme Court's specific approval of and reliance on the common law standard of an innkeeper's liability in *Maxwell Operating Co. v. Harper,* 138 Tenn. 640, 641–42, 200 S.W. 515, 516 (1918), I would conclude that the common law standard is no longer necessary or appropriate. The law of bailments, as it presently exists, adequately recognizes and balances the respective interests of inn keepers and their guests.

The stare decisis value of *Maxwell Operating Co.* is open to question. Ever since this case was decided, the courts have gone to some length to avoid relying on the common law standard of inn keeper's liability. *Dispeker v. New Southern Hotel Co.,* 213 Tenn. 378, 373 S.W.2d 904 (1963); *Kallish v. Meyer Hotel Co.,* 182 Tenn. 29, 184 S.W.2d 45 (1944); *Sewell v. Mountain View Hotel,* 45 Tenn.App. 604, 325 S.W.2d 626 (1959); *Andrew Jackson Hotel v. Platt,* 19 Tenn.App. 360, 89 S.W.2d 179 (1935).

However, this Court should not presume to modernize or modify the decisions of the Tennessee Supreme Court. *Bloodworth v. Stuart,* 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968); *Richardson v. Johnson,* 60 Tenn.App. 129, 136, 444 S.W.2d 708, 711 (1969). Any further modification of an inn keeper's common law liability must be left to the Tennessee Supreme Court or the General Assembly.

## II.

Opryland seeks to avoid the common law standard of liability in two ways. First, it insists that Mrs. Crocker's automobile was not "infra hospitium," or in its exclusive custody. Second, it contends that the Tennessee Supreme Court has adopted a different standard of liability with regard to automobiles. These arguments misconstrue the significance of the Supreme Court's opinion in *Dispeker v. New Southern Hotel Co.,* 213 Tenn. 378, 373 S.W.2d 904 (1963).

*Dispeker* involved a hotel's liability for the damage to its guest's automobile after an off-duty hotel employee stole it from the hotel's parking lot. The Court of Appeals found that the automobile was in the exclusive custody of the hotel and that the common law standard of liability was applicable. *Dispeker v. New Southern Hotel Co.,* 52 Tenn.App. 379, 390, 373 S.W.2d 897, 902 (1963). The Supreme Court denied the hotel's petition for writ of certiorari and issued one of its rare opinions explaining why it did so.

The hotel's petition questioned the applicability of the common law standard to the facts. The Supreme Court found it "unnecessary to decide [the] question" because the hotel's liability could be predicated on another theory. *Dispeker,* 213 Tenn. at 386, 373 S.W.2d at 908. Thus, far from announcing a different standard of inn keeper liability with regard to automobiles, the Supreme Court's opinion is limited to the facts of the case and stands only for the proposition that the inn keeper involved in the case could be liable to its guest on a theory analogous to misdelivery.

The facts in this case differ significantly from those in *Dispeker* and clearly support the applicability of the common law standard of liability. The determining factor is whether the guest's property was placed in the custody and control of the hotel. *Governor House v. Schmidt,* 284 A.2d 660, 661 (D.C.Ct.App.1971); *Vilella v. Sabine, Inc.,* 652 P.2d 759, 763 (Okla.1982) (Opala, J., concurring). That a garage or parking lot is open to the public or is not enclosed or contiguous to the hotel is not controlling as long as an automobile has been placed in the hotel's care and custody. *Plant v. Howard Johnson's Motor Lodge,* 500 N.E. 2d 1271, 1272–73 (Ind.Ct.App.1986).

Mrs. Crocker turned her automobile and keys over to a hotel employee when she checked in. An Opryland employee parked the automobile in the hotel's "valet park-

ing" area and kept the keys. This parking lot was on Opryland property adjacent to the hotel, and access to the lot was limited to hotel employees. Neither Mrs. Crocker nor any member of the public was permitted in the lot. In light of these facts, it is difficult to argue that Mrs. Crocker had not placed her automobile in Opryland's custody and that the automobile was not "infra hospitium" at the time it was damaged.